**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| STATE OF LOUISIANA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> *Defendant*. | Case No. 2:24-cv-629 |
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*, <br><br> *Defendants*. | Case No. 2:24-cv-691 |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM FOLLOWING PRELIMINARY-INJUNCTION HEARING

For the reasons previously expressed in Defendants' written filings and at the preliminary-injunction hearing on June 12, 2024, Defendants do not believe that any relief in the above-captioned cases is warranted, and thus the proper course would be to deny Plaintiffs' motions for preliminary relief. Earlier today, in a similar challenge brought by Tennessee and sixteen other States in the Eastern District of Arkansas, the Court denied the States' motion for a preliminary injunction and dismissed their Complaint without prejudice, concluding that "the States lack standing and haven't shown a likelihood of irreparable harm." Mem. Op. & Order, *Tennessee v. EEOC*, No. 2:24-cv-84 (E.D. Ark.), ECF No. 63 at 28 (attached hereto). Defendants respectfully submit that the same analysis warrants denial of the preliminary-injunction motions in the above-captioned cases.

-1-

To the extent the Court disagrees, however, Defendants respectfully submit this supplemental memorandum further explaining why any remedy entered by this Court should be narrowly tailored and should not intrude on the Equal Employment Opportunity Commission's (EEOC) statutory duties not at issue in this case. Granting broader relief as Plaintiffs have requested would contravene bedrock principles of equity, cause substantial harm to individual employees, and also upset businesses' desire for certainty regarding their legal obligations. Thus, any relief entered in this case should be limited to the parties and should make clear that EEOC may still administratively process charges under the Pregnant Workers Fairness Act (PWFA) even if EEOC is enjoined from investigating or bringing enforcement actions regarding charges (or portions of charges) pertaining to accommodations for certain types of abortions.

### I.     Any Relief Should Be Limited to the Parties Actually Before This Court

At the preliminary-injunction hearing, both sets of Plaintiffs clarified that they are not asking this Court to stay EEOC's Final Rule in its entirety—only the challenged portion pertaining to abortions. (Even that remedy should be tailored only to the abortions to which each group of Plaintiffs objects—*i.e.*, for the Catholic Plaintiffs, those abortions to which they have a religious objection; and for the State Plaintiffs, those abortions that are illegal under the respective States' laws.) Nonetheless, both sets of Plaintiffs request that the Court invoke 5 U.S.C. § 705 to stay the abortion component of the Final Rule not only as to them but nationwide—and for the State Plaintiffs, if not nationwide, then for all employers subject to the PWFA within the States of Louisiana and Mississippi. Entering this broad relief would be inequitable and unwarranted.

Remedies "ordinarily 'operate with respect to specific parties,'" rather than "'on legal rules in the abstract,'" *California* v. *Texas*, 593 U.S. 659, 672 (2021) (citation omitted). Equitable remedies are no exception: the "general rule" is that equitable relief "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Madsen* v. *Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979)). And Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice." *Hecht Co.* v. *Bowles*, 321 U.S. 321, 329 (1944); *see also Weinberger* v.

*Romero-Barcelo*, 456 U.S. 305, 313 (1982) (courts "do not lightly assume that Congress has intended to depart from established principles" of equity).

The text and history of 5 U.S.C. § 705 are consistent with those principles. The second sentence of § 705 authorizes a "reviewing court" to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings," but only "[o]n such conditions as may be required *and to the extent necessary to prevent irreparable injury*." 5 U.S.C. § 705 (emphasis added). That italicized phrase confirms that any relief should be tailored to proven irreparable injury, and not granted on behalf of parties who are not before the Court, have not requested (and may not want) such relief, and have not proven any need for immediate relief. The APA's legislative history likewise confirms that relief under § 705 should "normally, if not always, be limited to the parties complainant." *Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946). And here, there is clearly a narrow option available—*i.e.*, limiting relief only to the Plaintiffs in their capacities as employers—that would fully remedy any irreparable injuries in this case.

As the Fifth Circuit has previously recognized, including in cases arising under the APA, "nationwide injunctions are not required or even the norm." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (per curiam), modifications omitted)); *see also, e.g.*, *United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorsuch, J., concurring). At the preliminary-injunction hearing, Plaintiffs relied primarily on the Fifth Circuit's recent decision in *Career Colleges and Schools of Texas v. Department of Education*, 98 F.4th 220 (5th Cir. 2024), to support their request for broader relief extending to the world at large. But *Career Colleges* did not hold that plaintiffs are automatically *entitled* to broad relief in any given case. There, the Fifth Circuit rejected the argument that relief under § 705 *must* be limited to the parties before the Court and can never extend more broadly. *See id.* at 255 (rejecting argument that "the relief awarded under Section 705 can

*only* be specific to the plaintiff" (emphasis added)).[1] And in *Career Colleges*, the Fifth Circuit concluded that a broader remedy was necessary to avoid significant harms to the public—*i.e.*, potentially causing schools to "withdraw from Title IV entirely, which would be to the detriment of students who rely on the availability of Direct Loans." *Id.*

Here, in contrast, Plaintiffs' claimed irreparable injuries are all linked to their status as employers, and thus a tailored remedy—staying or enjoining enforcement of the challenged portion of the Final Rule only with respect to these Plaintiff entities as employers—is plainly available, and would fully redress any injuries the Court concludes they are suffering. For the Catholic Plaintiffs, an injunction or stay of the challenged portion of the Final Rule with respect to them would preserve the status quo, as they have requested. There is simply no need to stay any portion of the Final Rule as to anyone else. Similarly, for the State Plaintiffs, they have likewise "sued in their capacities as regulated employers," Reply Br. (ECF No. 32) at 10, which means that any remedy should likewise be limited to their status as employers.

The Plaintiff States' theory of sovereign injury does not change this analysis. For one thing, the States still have not pointed to any State law prohibiting the employment accommodations that the Final Rule requires. And at least one court has held that Louisiana state law *does* encompass workplace protections for employees who choose to have abortions. *See Ducharme v. Crescent City Déjà vu, L.L.C.*, 406 F. Supp. 3d 548, 557 (E.D. La. 2019). Thus, there is no basis for concluding that the Final Rule's requirements on private employers—*i.e.*, to provide certain accommodations that are fully permissible under State law—would constitute a sovereign injury of any kind.

At the preliminary-injunction hearing, recognizing that there is no State law actually forbidding the accommodations that the Final Rule requires, the States instead asserted that their employment *policies* forbid granting such accommodations. Even if the Court were to accept a purported conflict with employment policies as sufficient for injury, however, the States' claimed employment policies

---

[1] The United States disagrees with *Career Colleges* and preserves its position that 5 U.S.C. § 705 does not authorize universal stays of agency policies. Recognizing that *Career Colleges* is binding precedent, however, this filing explains why narrow relief is appropriate here even if, as *Career Colleges* held, broader relief is legally available in other cases.

still exist only in the context of the State operating as an employer. Thus, any such claimed injury would be fully redressed by an injunction or stay of the challenged portion of the Final Rule with respect to the States as employers—there is no need for relief to extend to any other employers operating within the Plaintiff States. *Cf. Commonwealth v. Biden*, 57 F.4th 545, 557 (6th Cir. 2023) ("Because an injunction limited to the parties can adequately protect the plaintiffs' interests while the case is pending disposition on the merits, the district court abused its discretion in extending the preliminary injunction's protection to non-party contractors in the plaintiff States.").

Moreover, the record here demonstrates that broad relief would harm members of the public. Congress enacted the PWFA with the support of business groups, including the U.S. Chamber of Commerce. *See* H.R. Rep. No. 117-27 at 5. As one witness noted at a congressional hearing, the PWFA provides "much-needed clarity" for employers about what accommodations are required, "thereby increasing the potential to resolve requests for accommodations quickly and informally . . . and reducing the potential for costly litigation." *Id.* at 31 (quoting testimony of Ms. Iris Wilbur, Vice President of Government Affairs and Public Policy at Greater Louisville Inc.—The Metro Chamber of Commerce, Louisville, KY). Amici business organizations have likewise emphasized the value of the PWFA and Final Rule in providing certainty for employers:

> Easy-to-understand guidance that provides precise rules of the road to follow—like the Final Rule—reduces the costs and burden on small businesses and helps employers comply with the legal requirements. And, for a small business, anything that reduces risk and increases stability and predictability makes opening, survival, and growth more possible.

Amicus Br. of Small Business Maj. (*USCCB* ECF No. 50) at 6. And as amici note, "[e]njoining some— or all—of the Final Rule would upend the certainty it promises." *Id.* In particular, were this Court to stay the abortion-related portion of the Final Rule for all employers nationwide, that would only create greater uncertainty for employers who are not parties to this case about whether they must provide accommodations for abortions. Were an employer to rely on this Court's ruling and deny an abortion-related accommodation, that employer would nonetheless remain subject to suit from the private employee—who would not be bound by any rulings in this case, because this Court lacks authority to

adjudicate the rights of parties not currently before the Court. *Cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). That situation is the opposite of regulatory certainty that businesses desire.

Finally, the Fifth Circuit has disfavored nationwide relief when "[o]ther courts are considering these same issues," and "ultimate resolution will benefit from 'the airing of competing views' in our sister circuits." *Louisiana v. Becerra*, 20 F.4th at 263-64. Here, as noted above, seventeen States filed a separate challenge in the Eastern District of Arkansas, and the Court hearing that challenge determined that those seventeen States were not entitled to any relief. *See* Mem. Op. & Order, *State of Tennessee et al. v. EEOC*, No. 2:24-cv-84, ECF No. 63 (E.D. Ark. June 14, 2024).

In these circumstances—where another challenge is proceeding and that Court has declined to provide any relief, the Plaintiffs' claimed injuries would be fully redressed by relief limited to them, and granting broader relief would harm the public—this Court should not "make a binding judgment for the entire country," *Louisiana v. Becerra*, 20 F.4th at 263, and should instead limit any relief only to the Plaintiffs in their capacities as employers.

## II. Any Injunctive Relief Should Not Interfere with EEOC's Administrative Processes

If the Court is inclined to issue injunctive relief against EEOC's ability to investigate charges and take enforcement action based on the Final Rule's coverage of abortion-related accommodations, Defendants respectfully request that any injunction avoid infringing on EEOC's statutory obligations in the following three ways. Adopting such an approach would avoid upending the statutorily defined charge process, while providing Plaintiffs with complete relief for their alleged injuries. Additionally, as discussed further below, several courts have implemented relief along these lines, proving that it is fully workable and not overly burdensome.

First, any injunctive relief should not prevent EEOC from accepting PWFA charges pursuant to 42 U.S.C. § 2000gg-2(a)(1) (adopting the procedures of Title VII, including 42 U.S.C § 2000e-5)).[2] This limitation is important because charges often raise potential claims under multiple statutes (*e.g.* the ADA, Title VII, and PWFA) and/or based on multiple different potentially violative acts. Plaintiffs

---

[2] For ease of reference, the remainder of this filing cites the Title VII procedural provisions directly; those provisions are incorporated into the PWFA by virtue of 42 U.S.C. § 2000gg-2(a)(1).

here challenge only the Final Rule's requirements as to abortion-related accommodations, and only for certain abortions—*i.e.*, those to which they object for religious reasons (for the Catholic Plaintiffs) or that violate State law (for the State Plaintiffs). There is therefore no basis to restrict EEOC's ability to investigate and take enforcement action based on (a) non-abortion related conduct that might be actionable under the PWFA and Final Rule, (b) abortion-related conduct that does not violate the Catholic Plaintiffs' religious beliefs or the State Plaintiffs' State laws, and/or (c) conduct that might violate statutes other than the PWFA. *See Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

Moreover, maintaining the charge filing requirement protects both employers and employees. Normally, an individual alleging employment discrimination under the PWFA must file a charge with EEOC within 180 or 300 days of the alleged unlawful practice. 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13; *see also Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 & n.7 (5th Cir. 2006). If EEOC were enjoined from accepting charges, however, individuals may bring suit at any point arguing that they need not have complied with the EEOC charge process—including the time limit on filing charges, which is not a jurisdictional requirement. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Such a scenario would create administrative confusion, potentially burden courts with having to adjudicate equitable claims, and expose employers to greater uncertainty by potentially eliminating the statutory time limit on filing charges.

Second, any relief should not restrict EEOC's ability to send notices to employers, including Plaintiff employers, informing them that a charge was filed against them. *See* 42 U.S.C § 2000e–5(b) (providing that "the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer . . . within ten days" of the charge being filed). Again, these notices are important given that charges may raise claims that are not related to Plaintiffs' narrow challenge here. After EEOC sends an employer who is a

beneficiary of the Court's injunction notice of a charge that the employer believes EEOC is foreclosed from pursuing (*i.e.*, investigating, making a cause determination, bringing litigation, or referring to DOJ for litigation) under this Court's rulings, in whole or in part, that employer may so inform EEOC and EEOC would then desist from investigating or enforcing the portion of the charge affected by the injunction. This approach would ensure EEOC is not hindered in its ability to take actions based on claims unrelated to the narrow challenge in this case, as noted above. This approach is also in the best interests of all parties. As the State and Catholic Plaintiffs both recognized at the preliminary-injunction hearing, certain abortions would not violate their respective laws or religious beliefs and accommodations for such abortions may be properly covered by the PWFA (absent undue hardship or another defense). Thus, if a charge related to abortion were filed against a Plaintiff, the Catholic Plaintiffs would be best situated to determine whether the abortion at issue conflicts with their religious beliefs, and the State Plaintiffs would be better positioned to determine whether the abortion was unlawful under their respective State laws.

Third and finally, any relief should not prohibit EEOC from following its existing processes regarding issuing Notice of Right to Sue letters (NRTS) to individuals, regardless of the conduct at issue in the charge. EEOC's issuance of an NRTS to an individual triggers a ninety-day period for that individual to bring suit in federal district court. *See* 42 U.S.C. § 2000e-5(f)(1) ("within ninety days after the giving of such notice a civil action may be brought"); *see also* 29 C.F.R. § 1601.28. If EEOC were restricted from issuing NRTS, the ninety-day limitations period for filing a lawsuit would never be triggered, thereby creating even greater uncertainty for employers about whether and when employees might bring suit on their claims—particularly given the non-jurisdictional nature of Title VII's administrative requirements. *See Zipes*, 455 U.S. at 393; *see also Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019); *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010); *cf. Jackson v. Chick & Seafood, Inc.*, No. 3:22-cv-1687, 2023 WL 2799736, at *2 (N.D. Tex. Apr. 4, 2023) (allowing employee to proceed with Title VII claims notwithstanding agency's failure to issue NRTS). Again, enjoining issuance of NRTS would create administrative confusion, potentially burden courts, and expose employers to greater uncertainty by functionally nullifying the statutory limitations period.

For the reasons described, the limits set forth above would ensure that any relief is "limited to the inadequacy that produced the injury in fact," *Lewis*, 518 U.S. at 357, and is "no more burdensome . . . than necessary," *Madsen*, 512 U.S. at 765 (citation omitted). In similar circumstances, courts have entered relief consistent with the points set forth above, thereby proving that this framework is fully workable and not overly burdensome on Plaintiff employers. *See, e.g.*, *Religious Sisters of Mercy v. Cochran*, No. 3:16-cv-386, 2021 WL 1574628, at *2 (D.N.D. Feb. 19, 2021); *Christian Emps. All. v. EEOC*, --- F. Supp. 3d ----, No. 1:21-cv-195, 2024 WL 935591, at *11 (D.N.D. Mar. 4, 2024); *see also Christian Emps. All.*, ECF No. 87 ¶ 3 (filed Apr. 9, 2024) (amending earlier Order). To the extent the Court is inclined to enter relief for Plaintiffs, therefore, Defendants respectfully request that such relief conform to the three points set forth above.

Dated: June 14, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*/s/ Daniel Schwei*
DANIEL SCHWEI (N.Y. Bar #4901336)
Special Counsel
LAURA B. BAKST (D.C. Bar #1782054)
ALEXANDRA WIDAS (D.C. Bar #1645372)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8693
Facsimile: (202) 616-8460
Email: daniel.s.schwei@usdoj.gov

*Counsel for Defendants*