# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS; THE SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAKE CHARLES; THE SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAFAYETTE; THE CATHOLIC UNIVERSITY OF AMERICA,<br><br>*Plaintiffs,*<br><br>v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION; CHARLOTTE BURROWS, Chair of the Equal Employment Opportunity Commission, in her official capacity,<br><br>*Defendants.* | No. 2:24-cv-691-DCJ-TPL<br><br>Judge David C. Joseph<br><br>Magistrate Judge Thomas P. LeBlanc<br><br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

**SUPPLEMENTAL BRIEF**

The Bishops submit this supplemental brief pursuant to this Court's guidance. ECF 41.

**I. The Court should preserve the status quo by (a) postponing the Final Rule's abortion-accommodation mandate, and (b) enjoining EEOC's enforcement of the underlying statute to impose an abortion-accommodation mandate on the Bishops.**

This Court should enter relief preserving the status quo. Here, that is simple because federal law does not currently require the Bishops to accommodate abortion. This means that the Bishops are entitled to "postpone[ment of] the effective date" of the Final Rule's abortion-accommodation mandate. 5 U.S.C. § 705; *Career Colls. & Schs. Of Tex. V. U.S. Dep't of Educ.*, 98 F.4th 220, 255-56 (5th Cir. 2024). It also means the Bishops should receive injunctive relief protecting against EEOC's enforcement of the PWFA statute to independently impose a similar mandate. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 377-80 (5th Cir. 2022) (affirming injunction against an agency's enforcement of a statute, as distinct from vacatur of the agency's rule).

Relief against EEOC's enforcement of the statute is not only appropriate under *Franciscan* but is particularly necessary here, because EEOC has repeatedly threatened to enforce an abortion-accommodation mandate under the PWFA *even if the Court postpones the Final Rule*. In the consolidated *Louisiana v. EEOC* proceedings, EEOC expressly argues that relief "against the Final Rule" does not, and should not, prevent EEOC from carrying out identical "duties" under the "statute" itself. *See* Def.'s Mem. In Opp'n to Pls.' Mot. at 11, No. 24-cv-629, ECF 21. And in this case, EEOC dedicated an entire section of its brief to arguing that, no matter what happens to the Final Rule, EEOC should not be enjoined from enforcing the statute. Resp.24-25.

Both EEOC and its amici have made clear that they oppose any restriction on the ability to enforce both the Rule *and* the statute against the Bishops. *See, e.g.*, Resp.24-25; Brief for ACLU et al. as Amici Curiae at 4-5, ECF 34-1. Thus, to maintain the status quo during this litigation, full relief requires both postponing the abortion-accommodation requirements in the Final Rule and enjoining EEOC from enforcing the PWFA to independently impose similar duties.

## II. EEOC's proposed limits on injunctive relief are improper.

For the same reasons, the Court should reject EEOC's request—made for the first time at oral argument two days ago, despite apparently having made similar arguments in other cases for years—to engage in several steps that participate in and directly authorize private enforcement of the abortion-accommodation mandate against the Bishops. That would be the opposite of preserving the status quo: the Bishops cannot be subjected by *anyone* to investigation, enforcement, or liability stemming from EEOC's abortion-accommodation mandate. Burdening the Bishops by investigating and authorizing employees' claims would create *additional* compliance costs and would *exacerbate* the Bishops' regulatory-compliance injuries.

That is particularly true of notice-of-rights letters issued by EEOC, without which private parties ordinarily cannot file suit. *See* 42 U.S.C. § 2000e-5(f)(1); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) ("Before suing, a plaintiff must exhaust administrative remedies …. To exhaust, a plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue."). Private lawsuits pose much the same burdens as EEOC enforcement actions, as EEOC admits. Resp.10. It would be improper to grant relief that permits the very injuries that the Bishops seek to avoid.

Nor are EEOC's just-cited cases to the contrary. Those all arose in the context of summary judgment, when the parties and the Court had time to carefully fine-tune the appropriate relief for a *permanent* injunction. But what was granted at the *preliminary* injunction stage is what the Bishops seek here: relief preserving the status quo by preventing EEOC from enforcing the challenged regulation or underlying statute against the religious plaintiffs. *See*, *e.g.*, *Christian Emps. All. v. EEOC*, No. 21-cv-195, 2022 WL 1573689, at *9 (D.N.D. May 16, 2022). That approach is right here, particularly given the tight timeline before the Bishops and the Court.

## III. The Bishops' face immediate concrete injury to their RFRA rights from the Final Rule and EEOC's interpretation of the PWFA.

Right now, the Bishops are being forced to choose between either obeying the Final Rule and EEOC's PWFA enforcement position, or following their Catholic beliefs. *See*, *e.g.*, Compl. ¶¶ 88-

2

92, 97-100, 109-112, 119-122; Caraway Sec. Decl. ¶¶ 8-11, ECF 40-1; Ridderhoff Sec. Decl. ¶¶ 11-12, 40-2. This is the precise injury recognized as sufficient to grant pre-enforcement relief under RFRA in both *Braidwood Management v. EEOC*, 70 F.4th 914, 937 (5th Cir. 2023) (substantial burden exists where EEOC forces religious employers to "choose between two untenable alternatives: either (1) violate Title VII and obey their convictions or (2) obey Title VII and violate their convictions"), and *Franciscan Alliance v. Azar*, 414 F. Supp. 3d 928, 943 (N.D. Tex. 2019) (regulation substantially burdened religious exercise where it placed "substantial pressure" on plaintiffs to violate their beliefs), *aff'd*, 47 F.4th 368.

To be sure, other injuries would certainly arise if the Bishops were forced into case-by-case investigation and adjudication under EEOC's mandate. For instance, under the mandate, the Bishops would face liability for their detailed "statements regarding [their] mission or religious beliefs" against abortion accommodation in the workplace. 89 Fed. Reg. 29,096, 29,142 & n.201 (Apr. 19, 2024). Such cases would involve "intrusive investigation[s]" into religious beliefs and cause "impermissible entanglement" with internal religious governance. *EEOC v. Catholic Univ.*, 83 F.3d 455, 466-67 (D.C. Cir. 1996). And it would be "not only" the liability conclusions reached by EEOC which would infringe the Bishops' "rights guaranteed by the Religion Clauses," but also "the very process of inquiry leading to findings and conclusions." *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979); *Whole Woman's Health v. Smith*, 896 F.3d 362, 366, 373 (5th Cir. 2018) (identifying "[b]oth free exercise and establishment clause problems" in a discovery order).

But the Court need not even reach those other injuries to grant relief now. Given that EEOC's Final Rule and statutory enforcement position clearly applies to the Bishops, and the Bishops' employment policies clearly violate EEOC's Rule and position, the Bishops face immediate injury and are entitled to immediate relief under RFRA. *Braidwood*, 70 F.4th at 931 (rejecting "EEOC's near talismanic mantra" of "further factual development" since nothing further was required "to determine … RFRA supersedes Title VII's requirements as applied to [Plaintiff's] specific employment policies"); *Franciscan All.*, 47 F.4th at 377 (agency's "promise to 'comply with the Religious Freedom Restoration Act'" in future enforcement didn't cure immediate injury).

3

Moreover, as *Braidwood*, *Franciscan Alliance*, and numerous other RFRA cases granting pre-enforcement relief show, RFRA is an oft-used vehicle to provide relief against an agency's illegal enforcement of the underlying statute itself—here, the PWFA. *Braidwood*, 70 F.4th at 940; *Franciscan All.*, 47 F.4th at 377-78; *see also Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1140 (D.N.D. 2021) (collecting cases finding pre-enforcement standing in RFRA challenges to agency regulations)

**IV. The major questions doctrines supports the structural constitutional interests here.**

The major questions doctrine protects a variety of constitutional interests. It safeguards "separation of powers principles" by ensuring that agencies exercise "only those powers given to them by Congress." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022); *see also id.* at 736-40 (Gorsuch, J., concurring) (elaborating upon this protection). The Supreme Court has also made clear that the doctrine protects principles of federalism. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 249, 269-70 (2006) (Controlled Substances Act did not clearly authorize the Attorney General to supplant the states' traditional police powers over the regulation of medicine with respect to the "political and moral debate" surrounding physician assisted suicide); *Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (applying major questions to prevent Congress from "intrud[ing] into an area that is the particular domain of state law"); *see also Louisiana v. U.S. EPA*, No. 2:23-cv-692, --- F. Supp. 3d ----, 2024 WL 250798, at *29-30 (W.D. La. Jan. 23, 2024) (applying major questions doctrine to invalidate EPA's interpretation of Title VI that "invade[d] the purview of the State's domain").

The Bishops explained that because the doctrine serves to protect structural interests, it applies with force in the church-and-state context at issue here. Br.14-15. As the Fifth Circuit has recognized—in a case where abortion providers sought intrusive and entangling discovery into the Catholic bishops' internal governance on abortion—the First Amendment protects "structural" limitations on the power of the state to interfere in sensitive religious matters. *Whole Woman's Health*, 896 F.3d at 366, 373. The Fourth Circuit just re-affirmed that position, finding that the First Amendment addresses "structural concerns regarding separation of powers," working to

4

"confine[ ] the state and its civil courts to their proper roles" of noninterference with religious matters. *Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 325 (4th Cir. 2024).

Under the major-questions doctrine, those structural interests underscore the need for "clear" Congressional authorization for EEOC's abortion mandate. And there's no question that EEOC lacks such authorization under the PWFA. Reply at 7.

**V.   The order in *Tennessee v. EEOC* does not change the result in this case.**

Indeed, the order EEOC today identifies in *Tennessee v. EEOC* only *confirms* that the Bishops "have the better argument on the text"—which seals the statutory argument here. *See* No. 24-cv-84 (E.D. Ark. June 14, 2014), ECF 63 at 25-26. And while the *Tennessee* court (questionably) found that the States there lacked standing to challenge EEOC's warping of the PWFA, its analysis does not apply to the Plaintiffs here under Fifth Circuit law. And EEOC does not claim otherwise.

Unlike in *Tennessee*, EEOC cannot dispute that enforcement against the Bishops must be *assumed* absent "compelling contrary evidence," *Speech First v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), that amounts to a "disavow[al]" of enforcement, *Franciscan All.* 47 F.4th at 376. EEOC failed to submit any such evidence and has refused to make any such disavowal here. *See* Reply at 3-4. Further, the *Tennessee* court's reliance on the EEOC's claims of multi-part speculation over injury-in-fact, which EEOC recycled in this case, fails here for three reasons. First, the Fifth Circuit rejected nearly identical arguments in *Braidwood* and *Franciscan Alliance*. Second, as the Bishops have explained, they face liability for policies and practices that are immediately implicated here. Reply at 2-3; *contra Tennessee*, slip op. at 9. And third, EEOC cannot contest that the Bishops are "an object of [EEOC's] regulation," meaning there is "ordinarily little question that [the regulation] has caused [them] injury." *Contender Farms v. USDA*, 779 F.3d 258, 264 (5th Cir. 2015); *see also Tennessee v. Dep't of Educ.*, No. 22-5807 (6th Cir. June 14, 2024), slip opinion at 26 & n.10, available at https://www.opn.ca6.uscourts.gov/opinions.pdf/24a0132p-06.pdf (distinguishing Eighth Circuit precedent relied on in the *Tennessee* decision, concluding that regulated parties may challenge regulations instead of "assum[ing]" risks of "lengthy and arduous investigation" "while waiting for an agency to drop the hammer") (cleaned up).

5

The *Tennessee* court also faulted the States there for suing only EEOC (not DOJ, which can enforce the PWFA against states) and challenging only the Final Rule (and not the underlying PWFA itself). But EEOC itself is the sole agency charged with bringing enforcement proceedings against private employers like the Bishops, *see* 42 U.S.C. § 2000e-5(b), (f), and as explained above the Bishops have directly challenged *both* the Rule's abortion-accommodation mandate *and* EEOC's identical interpretation of the statute itself, *see, e.g.*, Compl. 55 and ¶¶ 143, 183, 219, 239. *See also* Mot. for Prelim. Inj. at 1, ECF 11 (same). Regardless, under Fifth Circuit law, "a challenge to an agency regulation is necessarily to the underlying statute as well." *Franciscan All.*, 47 F.4th at 378 (confirming "the right way to view" plaintiffs' regulatory challenge is "as challenging one Government action that causes their harm: the Government's threatened enforcement of the statute, *through* its implementing regulation") (cleaned up).

The *Tennessee* court also repeatedly erred in its major-questions analysis. There, the court applied *Chevron* deference to EEOC's interpretation of the PWFA (deference EEOC has not asserted claimed before this Court), even though it thought "the States have the better argument on the text." *Tennessee*, slip op. at 25-26. But by (incorrectly) finding the law ambiguous, the Court's analysis *at least* demonstrates that there has been no clear congressional authorization. The court attempted to evade that problem in a curious way: by concluding that the regulation does not raise a major question because it doesn't "resolve a matter of great political significance." *Id.* at 23. But that cannot be reconciled with the obvious continued significance of abortion, a "national controversy" that has "inflamed our national politics" "for a half century." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 229, 269 (2022); *see also RJ Reynolds Tobacco Co. v. Food & Drug Admin.*, 96 F.4th 863, 877 (5th Cir. 2024) (emphasizing "the controversial nature of abortion").[1] And that point this is doubly true here, where the claims before the Court implicate the constitutional rights of religious objectors to abstain from supporting abortion. Reply at 7.

---

[1] *See, e.g.*, Deidre McPhillips, *Abortion is the Top Issue for 1 in 8 Voters in the US Ahead of This Year's Elections, KFF Survey Finds*, CNN.com (Mar. 7, 2024) https://www.cnn.com/2024/03/07/health/abortion-elections-kff-survey/index.html

The *Tennessee* court further suggested that the Final Rule raised no major questions because it was promulgated under a "newly minted" statute, rather than a "long extant statute" or provision that had "rarely been used in the preceding decades." Slip op. 21-22. That misses the analytical mark. An agency's invocation of "unheralded" authority under long-existing statutes or ancillary provisions raises skepticism because it indicates that the agency has "ma[de] a radical or fundamental change to a statutory scheme." *West Virginia*, 597 U.S. at 723 (cleaned up). So too here, where EEOC invoked its regulatory authority to transform a simple, bipartisan statute facilitating healthy pregnancies and childbirth into a nationwide abortion accommodation mandate.

Respectfully submitted,

Jonathan Berry
  (W.D. La. Temporary Bar No. 918121)
James R. Conde
  (W.D. La. Temporary Bar No. 918116)
Boyden Gray PLLC
801 17th St. NW, Suite 350
Washington, DC 20006
Phone: (202) 955-0620
Fax: (202) 955-0621
jberry@boydengray.com

/s/ Daniel H. Blomberg
Daniel H. Blomberg
  (W.D. La. Temporary Bar No. 918117)
  *Trial Attorney*
/s/ Michael J. O'Brien
Michael J. O'Brien
  (LA Bar No. 38852)
Laura Wolk Slavis
  (W.D. La. Temporary Bar No. 918118)
Andrea R. Butler
  (W.D. La. Temporary Bar No. 918119)
Jordan T. Varberg
  (W.D. La. Temporary Bar No. 918120)
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Phone: (202) 955-0095
Fax: (202) 955-0090
dblomberg@becketlaw.org

*Counsel for Plaintiffs*

Dated: June 14, 2024

7

## CERTIFICATE OF COMPLIANCE

This supplemental brief complies with the length limitations of Local Rule 7.8.

/s/ Daniel H. Blomberg
Daniel H. Blomberg
 (W.D. La. Temporary Bar No. 918117)
 *Trial Attorney*
/s/ Michael J. O'Brien
Michael J. O'Brien
 (LA Bar No. 38852)

Dated: June 14, 2024

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 14, 2024, the foregoing was served on counsel for all parties via the Court's CM/ECF system.

/s/ Daniel H. Blomberg
Daniel H. Blomberg
  (W.D. La. Temporary Bar No. 918117)
  *Trial Attorney*
/s/ Michael J. O'Brien
Michael J. O'Brien
  (LA Bar No. 38852)

Dated: June 14, 2024