# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| STATE OF LOUISIANA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION <br><br> *Defendant*. | Case No. 2:24-cv-629-DCJ-TPL |
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS; THE SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAKE CHARLES; THE SOCIETY OF THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF LAFAYETTE; THE CATHOLIC UNIVERSITY OF AMERICA, <br><br> *Plaintiffs*, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION <br><br> *Defendant*. | Case No. 2:24-cv-691-DCJ-TPL |

**BRIEF OF *AMICI CURIAE* SMALL BUSINESS MAJORITY, MAIN STREET ALLIANCE, AND AMERICAN SUSTAINABLE BUSINESS COUNCIL IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## FEDERAL RULE OF CIVIL PROCEDURE 7.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel for Small Business Majority, Main Street Alliance, and American Sustainable Business Council certifies that:

1. Small Business Majority, Main Street Alliance, and American Sustainable Business Council have no parent corporation, and

2. No corporation owns any stock in Small Business Majority, Main Street Alliance, and American Sustainable Business Council.

*/s/ William Most*
William Most

i

## TABLE OF CONTENTS

Page

FEDERAL RULE OF CIVIL PROCEDURE 7.1 DISCLOSURE STATEMENT ......................... i

TABLE OF AUTHORITIES ....................................................................................................... iii

STATEMENT OF INTEREST OF *AMICI CURIAE* ................................................................... 1

INTRODUCTION ......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

    I.    The EEOC's Rule Provides Vital Guidance to Employers ..................................... 3

    II.    Plaintiffs' Requested Relief Would Cause Confusion, Harming Employers and Employees ................................................................................................................ 5

    III.    The EEOC's Rule is Good for Business and the Economy .................................... 9

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Statutes** **Page(s)**

42 U.S.C. § 2000gg ................................................................................................................ 3

42 U.S.C. § 2000gg-1 ............................................................................................................ 3

Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49 ............................... 7

La. Rev. Stat. § 40:1061 ........................................................................................................ 7

Miss. Code. Ann. § 41-41-45 ................................................................................................. 6

**Rules and Regulations**

Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29096 (April 19, 2024) (to be codified at 29 C.F.R. pt. 1636) ............................................................. 4, 5, 6, 8

**Other Authorities**

Ben Gitis et al., *Morning Consult: 1 in 5 Moms Experience Pregnancy Discrimination in the Workplace*, Bipartisan Pol'y Ctr. (Feb. 11, 2022), https://bipartisanpolicy.org/blog/bpc-morning-consult-pregnancy-discrimination/ ................. 10

Carly McCann & Donald Tomaskovic-Devey, *Pregnancy Discrimination at Work: An Analysis of Pregnancy Discrimination Charges Filed with the U.S. Equal Employment Opportunity Commission*, Ctr. for Emp. Equity, Univ. of Mass. Amherst (2021), https://www.umass.edu/employmentequity/sites/default/files/Pregnancy%20Discrimination%20at%20Work.pdf ............................................................................................ 10

Colleen Payton et al., *Evaluation of Workplace Lactation Support Among Employers in Two Pennsylvania Cities*, 62 Bus. Horizons 579 (2019), https://www.sciencedirect.com/science/article/pii/S0007681318301800#sec0115 ................. 13

*Costs and Benefits of Accommodation*, Job Accommodation Network (Apr. 5, 2024), https://askjan.org/topics/costs.cfm ............................................................................... 12, 13

Dina Bakst et al., *Long Overdue: It Is Time for the Federal Pregnant Workers Fairness Act*, A Better Balance (2019), https://www.abetterbalance.org/wp-content/uploads/2019/05/Long-Overdue.pdf ............................................................. 12

*Fact Sheet: The State of Women in the Labor Market in 2023*, Ctr. for Am. Progress (Feb. 6, 2023), https://www.americanprogress.org/article/fact-sheet-the-state-of-women-in-the-labor-market-in-2023/ ............................................................................ 10

Giulia Carbonaro, *America's Labor Shortage is Most Severe in These 13 States*, Newsweek (Aug. 10, 2023), https://www.newsweek.com/america-labor-shortage-most-severe-13-states-1818545 .................................................................................. 11

Jessica Mason & Katherine Gallagher Robbins, *Discrimination While Pregnant*, Nat'l P'ship for Women & Fams. (2022), https://nationalpartnership.org/report/discrimination-while-pregnant/ .................................... 10

*Labor Force Participation Rate for Women Highest in the District of Columbia in 2022*, U.S. Bureau of Lab. Stat. (Mar. 7, 2023), https://www.bls.gov/opub/ted/2023/labor-force-participation-rate-for-women-highest-in-the-district-of-columbia-in-2022.htm ........................................................................ 9

Lena Burleson et al., *Pregnancy and Parental Status Discrimination: A Review of Career Impacts and Mitigation Strategies*, Insight Pol'y Rsch. Inc. (2022), https://dacowits.defense.gov/Portals/48/Documents/Reports/2022/Insight%20RFI%2016_Lit%20Review_Pregnancy%20and%20Parental%20Status%20Discrimination.pdf?ver=YSqHzfeHAHkwxDRwvVo3Cw%3D%3D .............................................. 11

Letter from Neil L. Bradley, Exec. Vice President & Chief Pol'y Officer, U.S. Chamber of Com., to Members of the U.S. Senate (July 21, 2021), https://www.uschamber.com/assets/documents/210721_s._1486_pregnantworkersfairnessact_senate.pdf ........................................................................................................... 9

*Long Over Due: Exploring the Pregnant Workers' Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civil Rights and Hum. Servs. of the H. Comm. on Ed. & Lab.*, 116th Cong. (2019), https://www.govinfo.gov/content/pkg/CHRG-116hhrg39487/pdf/CHRG-116hhrg39487.pdf ............................................................... 5, 9, 11

Margaret D. Whitley et al., *Workplace Breastfeeding Support and Job Satisfaction Among Working Mothers in the United States*, 62 Am. J. Indus. Med. 716 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/pdf/nihms-1735888.pdf ............... 13

Shane McFeely & Ben Wigert, *This Fixable Problem Costs U.S. Businesses $1 Trillion*, Gallup (Mar. 13, 2019), https://www.gallup.com/workplace/247391/fixable-problem-costs-businesses-trillion.aspx ....................................................................................................................... 11

Small Bus. Majority, *Opinion Poll: Women Entrepreneurs See Access to Reproductive Health as Essential to Their Economic Security* (2023), https://smallbusinessmajority.org/sites/default/files/research-reports/2023-women-small-business-reproductive-health-report.pdf ........................................................................ 12

*Small-Business Labor Crisis Report 2023*, Ramsey Sols. (2023), https://cdn.ramseysolutions.net/media/b2b/entre/article/the-small-business-labor-crisis/2023-small-business-labor-crisis-report-final.pdf ............................................................. 11

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici curiae* represent businesses, including small businesses, across the nation that are regulated by the Final Rule, and appreciate the Final Rule's clear guidance about their legal obligations to their employees. *Amici* previously filed briefs in opposition to Plaintiffs' Motions for Preliminary Injunction. While *amici* again defer to Defendant to explain why the relief Plaintiffs seek contravenes the PWFA, and is not otherwise proper relief, *see* EEOC Br. Opp. Mot. Summ. J. 17-26, *amici* are filing at this juncture to highlight the injury that the requested relief would cause, including for parties not before the Court (including small businesses in Louisiana and Mississippi). *Amici* are:

*Amicus curiae* Small Business Majority is a national small business organization that empowers America's diverse entrepreneurs to build a thriving and equitable economy. Small Business Majority engages a network of more than 85,000 small businesses and 1,500 business and community organizations to deliver resources to entrepreneurs and advocate for public policy solutions that promote inclusive small business growth. Small Business Majority's work is bolstered by extensive research and deep connections with the small business community.

*Amicus curiae* Main Street Alliance ("MSA") is a national network of small businesses, which represents approximately 30,000 small businesses across the United States. MSA helps small business owners realize their full potential as leaders for a just future that prioritizes good jobs, equity, and community through organizing, research, and policy advocacy on behalf of small businesses. MSA also seeks to amplify the voices of its small business membership by sharing their experiences with the aim of creating an economy where all small business owners have an equal opportunity to succeed.

*Amicus curiae* the American Sustainable Business Council ("ASBC") is a multi-issue membership organization comprised of the business and investor community, which collectively

represents over 200,000 businesses, the majority of which are small and midsized businesses. ASBC advocates for solutions and policies that support a just, sustainable stakeholder economy. Its mission is to educate, connect, and mobilize business leaders and investors to transform the public and private sectors and the overall economy.

## INTRODUCTION

The Pregnant Workers Fairness Act ("PWFA") is a landmark, bipartisan law that creates a national standard for how employers handle workplace accommodation requests from pregnant employees. Congress directed Defendant Equal Employment Opportunity Commission ("EEOC") to promulgate regulations to implement the PWFA's requirements. The EEOC did so, issuing a Final Rule that provides important guidance for employers on how to comply with the PWFA and for employees on how to access the law's benefits.

Pregnant workers benefit tremendously from the protections of the PWFA and the Final Rule. Employers do as well. *Amici* and their members better understand their obligations to their employees following the issuance of the Final Rule. Accommodating employees with qualifying conditions will allow their employees to stay on the job longer, reducing costly employee turnover and avoidable leaves of absence.

The relief sought by Plaintiffs threatens to upend this system and undermine the effectiveness of the PWFA. The State Plaintiffs seek to vacate the Final Rule's "abortion-accommodation mandate," and both the State Plaintiffs and Bishops Plaintiffs seek a permanent injunction of the Rule. Granting this request will sow chaos and confusion, harming *amici*'s members and their employees. The Court should deny both the State Plaintiffs' and the Bishops Plaintiffs' requests for summary judgment, and grant Defendant's motion.

## ARGUMENT

**I.      The EEOC's Rule Provides Vital Guidance to Employers.**

The Final Rule provides important guidance to employers about how to comply with the PWFA, which has been in effect since last year. For example, the Rule explains what conditions are covered by the Act, addresses the types of accommodations that may be "reasonable," including predictable assessments, and lays out a process to ensure that employers and employees can quickly collaborate to address employees' health needs. The guidance set forth by EEOC is particularly important to *amici*'s members, many of whom are small businesses that often lack the resources to retain counsel to ensure compliance with employment laws.

The PWFA requires that employers with fifteen or more employees provide "reasonable accommodations" for "known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the employer can demonstrate "the accommodation would impose an undue hardship" on the employer's business. 42 U.S.C. § 2000gg-1(1). The Act defines "known limitation" as any "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). The Rule, in turn, provides necessary guidance on "related medical conditions," offering a "non-exhaustive" list of conditions covered, including, among other things, termination of pregnancy, including via miscarriage, stillbirth, or abortion; ectopic pregnancy; preterm labor; pelvic prolapse; nerve injuries; cesarean or perineal wound infection; gestational diabetes; preeclampsia; HELLP (hemolysis, elevated liver enzymes and low platelets) syndrome; hyperemesis gravidarum; endometriosis; sciatica; lumbar lordosis; nausea or vomiting; edema of the legs, ankles, feet, or fingers; high blood pressure; infection; antenatal (during pregnancy) anxiety, depression, or psychosis; postpartum depression, anxiety, or psychosis; frequent urination; incontinence; and lactation and conditions related to lactation. Implementation of the Pregnant Workers Fairness Act,

3

89 Fed. Reg. 29096, 29183 (April 19, 2024) (to be codified at 29 C.F.R. pt. 1636). The Rule's preamble explains that the Rule does not "requires blanket accommodation for every condition listed nor precludes accommodations for conditions that are not listed." *Id.* at 29101. Instead, the Rule provides a blueprint to help employers determine if the employee's medical condition relates to "current pregnancy; past pregnancy; potential or intended pregnancy . . . ; labor; and childbirth[.]" *Id.* at 29183.

The Final Rule also provides comprehensive examples of "reasonable accommodations" that employers may offer. Potential accommodations include modifying work schedules, modifying uniforms, permitting use of paid leave or providing unpaid leave, allowing for telework, providing a reserved parking space, temporarily suspending "essential functions" of the job, and allowing for breaks and a private place for lactation in reasonable proximity to the employee's usual work area. 89 Fed. Reg. at 29184-85. Even more explicitly, the Final Rule offers four "predictable assessments"—simple accommodations that when requested by a pregnant employee will "in virtually all cases," be found to be "reasonable accommodations." *Id*. at 29185-86. The "predictable assessments" are allowing the employee to, as needed, carry or keep water near; take additional restroom breaks; take breaks to eat and drink; and allowing an employee whose work requires standing to sit and whose work requires sitting to stand, as needed. *Id*. at 29186. The examples provided, both as reasonable accommodations and "predictable assessments," helpfully give employers a framework for understanding what types of accommodations to offer their employees, absent undue hardship.

*Amici*'s members also benefit from the Rule's guidance on the "interactive process." The Rule makes clear that "[t]here are no rigid steps that must be followed" in accommodating an employee. *Id*. at 29186. Instead, the employer and employee must engage in an "informal,

4

interactive process" that identifies the known limitation under the PWFA, the adjustment or change at work that is needed due to the limitation, and potential reasonable accommodations. *Id.* The Final Rule explains when an employer may—and may not—require additional documentation, ensuring that employers know what is permitted. *Id.* And the Rule incentivizes employers to offer an interim reasonable accommodation while evaluating the employee's request, by explaining doing so is a "best practice" and "may help limit a covered entity's exposure to liability." *Id*. at 29123.

Appended to the Rule is an Appendix containing 78 examples applying the Rule to potential scenarios. *Id.* at 29189-219. The guidance provided by the Final Rule and Appendix are particularly important to small businesses, like many of *amici*'s members. Small businesses often lack the resources to retain counsel for compliance assistance, sometimes lacking even Human Resources personnel to track and shift their practices based on the litigation landscape.[1] Easy-to-understand guidance that provides precise rules of the road to follow—like the Final Rule— reduces the costs and burden on small businesses and helps employers comply with the legal requirements. And, for a small business, anything that reduces risk and increases stability and predictability makes opening, survival, and growth more possible. Even a marginal decrease in costs can be beneficial to a small business, where margins are slim and incomes are modest. Vacating or enjoining even a portion of the Final Rule would upend the certainty it promises.

## II.     Plaintiffs' Requested Relief Would Cause Confusion, Harming Employers and

---

[1] *See Long Over Due: Exploring the Pregnant Workers' Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civil Rights and Hum. Servs. of the H. Comm. on Ed. & Lab.*, 116th Cong. 24 (2019), https://www.govinfo.gov/content/pkg/CHRG-116hhrg39487/pdf/CHRG-116hhrg39487.pdf (testimony of Iris Wilbur).

**Employees.**

Both the State Plaintiffs' and Bishop Plaintiffs' arguments hinge chiefly on whether "abortion" should be included as part of the Rule's list of "related medical conditions" that may require reasonable accommodation. Importantly, from *amici*'s perspective, a significant problem with the relief Plaintiffs seek—excluding "abortion" from the Rule nationwide—will confuse employers and employees on the scope of the PWFA.

As a threshold matter, Plaintiffs use inconsistent definitions for "abortion." The State Plaintiffs reference "elective abortion," appearing to concede that abortion may sometimes be necessary medical care that employers should accommodate under the law. States Br. Supp. Mot. Summ. J. 16 [hereinafter States Br.]. The Bishop Plaintiffs discuss "direct abortion." Bishops Br. Supp. Permanent Inj. 9 [hereinafter Bishops Br.]. The Rule neither defines, nor even mentions, "elective abortion" or "direct abortion." Under the request relief Plaintiffs seek, *amici* and their members would not have any guidance as to what abortion care they must accommodate under the PWFA, making it difficult for them to comply and undermining the clarity provided by the Final Rule and Appendix for employers and their employees alike. 89 Fed. Reg. at 29189-219.

Further examining the competing definitions Plaintiffs set forth underscores the potential for confusion. The State Plaintiffs object to the use of "elective abortion" as "medically unnecessary abortions in violation of Louisiana and Mississippi law." States Br. 16. But Louisiana and Mississippi are not identical. "Mississippi law currently generally prohibits abortions within the State 'except in the case where necessary for the preservation of the mother's life or where the pregnancy was caused by rape.'" 2d Hardwick Decl. ¶ 6 (No. 24-cv-629, ECF No. 70-4) (quoting Miss. Code. Ann. § 41-41-45). Louisiana law, by contrast, contains no exception for rape or incest, but does allow for termination of pregnancy not just "to prevent the death or substantial risk of

6

death due to a physical condition" but also "to prevent the serious, permanent impairment of a life-sustaining organ of a pregnant woman." La. Rev. Stat. § 40:1061.[2]

Looking at the Bishop Plaintiffs' definition creates even more questions. The Bishops Plaintiffs seek to enjoin the provision of "direct abortion," which appears to include *all* abortions, even those performed to treat a pregnancy-related complication or protect the health of the pregnant person. *See* Bishops Br. 10 ("The Rule broadly mandates abortion accommodations regardless of the underlying reason, and abortion remains a 'procedure,' regardless of why it is performed. And if abortion is a procedure, then the PWFA is not implicated." (internal citation omitted)); 2d Kunkel Decl. ¶ 20 (No. 24-cv-691, ECF No. 77-3) ("This prohibition on abortion—meaning the direct taking of the child's life—extends to situations in which the mother faces serious or grave illness during pregnancy."). If the relief Plaintiffs seek is entered, employers will have no guidance, apparently being left to navigate the complexities of what the law requires and to make medical judgments that they have no training or expertise to make, all while pressing their employees for the most personal of details, in order to comply with the relief Plaintiffs appear to seek.[3] This is unworkable, particularly for small businesses.

Plaintiffs' requested relief may also be impossible for employers to lawfully implement. The State Plaintiffs suggest "elective abortion" is a procedure "without medical justification,"

---

[2] *Policy Tracker: Exceptions to State Abortion Bans and Early Gestational Limits,* Kaiser Fam. Found. (July 29, 2024), https://www.kff.org/womens-health-policy/dashboard/exceptions-in-state-abortion-bans-and-early-gestational-limits.

[3] The federal laws the State Plaintiffs reference do not provide any assistance to employers in sorting out the confusion. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 131 (federal funds cannot be used to pay for an abortion, except where the life of the mother would be endangered if the fetus were carried to term, or in the case of rape or incest); *id.* at 496 (federal funds cannot be provided to entities that discriminate against health care entities that do not provide, pay for, provide coverage of, or refer for abortions, with no exceptions for rape or incest).

States Br. 16, *see also* Bishops Br. 9, which would force employers to inquire about the justifications for their employees' medical care. The Rule expressly limits the types of documentation employers may request from their employees. Recognizing the importance of employee and patient privacy, the Commission has limited employers to requesting supporting documentation "only when it is reasonable under the circumstances." 89 Fed. Reg. at 29186. The Rule also expressly provides for situations where it is not "reasonable" for an employer to request documentation. One such situation occurs when the "requested accommodation is available to employees without known limitations under the PWFA pursuant to a covered entity's policies or practices without submitting supporting documentation." *Id.*

Plaintiffs' requested relief would force employers to impermissibly inquire about what sort of medical care their employees are receiving and the reasons for that care. Indeed, the Rule recognizes that "the type of accommodation that most likely will be sought under the PWFA regarding an abortion is time off to attend a medical appointment or for recovery." *Id.* at 29104. If an employer's policies allow employees time off for a medical appointment or for leave without supporting documentation, employers would not be permitted to request documentation about the basis for that appointment. *Id.* at 29210 ("For example, if an employer has a policy or practice of requiring supporting documentation only for the use of leave for 3 or more consecutive days, it would not be reasonable to ask someone who is using the same type of leave due to a known limitation under the PWFA to submit supporting documentation when they request leave for 2 or fewer days."). An injunction carving "elective abortions" out of the Rule could push employers to inquire about the reasons for a medical appointment and the type of care they have received and are receiving—even if they would not otherwise do so, in violation of the Rule.

8

Enjoining the Rule for "elective abortions" or "direct abortions" also would be incongruous and inconsistent with the Pregnancy Discrimination Act ("PDA"), furthering confusing *amici*'s members. Congress intended for the PWFA to fill the gaps left by existing laws, such as the PDA.[4] *Amici* members and other employers have long understood that they cannot take adverse employment action against employees who have had an abortion under the PDA. It makes little sense that an employer could deny an employee time off to have an abortion or recover from an abortion but could not terminate the same employee for receiving that care. Interpreting two coextensive statutes differently risks confusing employers on the contours of their obligations and needlessly exposes them to liability.

### III. The EEOC's Rule is Good for Business and the Economy.

*Amici* also know that the PWFA and the Final Rule make good business sense. There is widespread support from the business community for the PWFA.[5] Advancing women's participation in the workforce is critical to spurring economic growth and advancing equality. Women today make up nearly half the labor force.[6] But despite gains by women in recent decades,

---

[4] *Long Over Due: Exploring the Pregnant Workers Fairness Act (H.R. 2694)*, *supra* note 1, at 4 (statement of Rep. Suzanne Bonamici). *See also* H.R. Rep. No. 117-27, pt. 1, at 17 (2021), https://www.congress.gov/117/crpt/hrpt27/CRPT-117hrpt27.pdf ("To remedy the shortcomings of the PDA, Congress must step in and act.").

[5] *See* Letter from Neil L. Bradley, Exec. Vice President & Chief Pol'y Officer, U.S. Chamber of Com., to Members of the U.S. Senate (July 21, 2021), https://www.uschamber.com/assets/documents/210721_s._1486_pregnantworkersfairnessact_senate.pdf (stating that the U.S. Chamber of Commerce "strongly supports" the PWFA and recognizing that "[e]mployers currently face great uncertainty about whether, and how, they are required to accommodate pregnant workers.").

[6] *Labor Force Participation Rate for Women Highest in the District of Columbia in 2022*, U.S. Bureau of Lab. Stat. (Mar. 7, 2023), https://www.bls.gov/opub/ted/2023/labor-force-participation-rate-for-women-highest-in-the-district-of-columbia-in-2022.htm.

9

gender gaps in employment and earnings persist.[7]  The PWFA and the Final Rule are critical tools to keep women in the workforce, whether they want to remain pregnant or not.  Keeping these workers in the workforce could improve the national economy, as well as help *amici*'s members by increasing worker retention, reducing leaves of absences, and improving the health, well-being, and productivity of their employees.

Nearly 2.8 million workers each year—70 percent of all pregnant women—are employed during the year of their pregnancy.[8]  According to one survey, nearly half of pregnant workers required some sort of accommodation to continue working.[9]  But prior to the passage of the PWFA and the promulgation of the Final Rule, employees were often unable to obtain those accommodations or were afraid to request needed accommodations altogether.[10]  Pregnancy discrimination—coupled with a lack of paid leave and the enormous costs of child care—drove women out of the workforce.  Labor force participation decreased by 30 percentage points within a year of motherhood.[11]

---

[7] *Fact Sheet: The State of Women in the Labor Market in 2023*, Ctr. for Am. Progress (Feb. 6, 2023), https://www.americanprogress.org/article/fact-sheet-the-state-of-women-in-the-labor-market-in-2023/.

[8] Jessica Mason & Katherine Gallagher Robbins, *Discrimination While Pregnant*, Nat'l P'ship for Women & Fams. (2022), https://nationalpartnership.org/report/discrimination-while-pregnant/.

[9] Carly McCann & Donald Tomaskovic-Devey, *Pregnancy Discrimination at Work: An Analysis of Pregnancy Discrimination Charges Filed with the U.S. Equal Employment Opportunity Commission*, Ctr. for Emp. Equity, Univ. of Mass. Amherst 8 (2021), https://www.umass.edu/employmentequity/sites/default/files/Pregnancy%20Discrimination%20at%20Work.pdf.

[10] Nearly one in four mothers considered leaving their jobs during a pregnancy due to a lack of reasonable accommodations or fear of discrimination from an employer. Ben Gitis et al., *Morning Consult: 1 in 5 Moms Experience Pregnancy Discrimination in the Workplace*, Bipartisan Pol'y Ctr. (Feb. 11, 2022), https://bipartisanpolicy.org/blog/bpc-morning-consult-pregnancy-discrimination/.  One in five mothers say they have experienced pregnancy discrimination. *See id.* at 8 (estimating that 250,000 women a year are denied pregnancy related accommodations).

[11] Lena Burleson et al., *Pregnancy and Parental Status Discrimination: A Review of Career Impacts and Mitigation Strategies*, Insight Pol'y Rsch. Inc. 8 (2022), https://dacowits.defense.gov/Portals/48/Documents/Reports/2022/Insight%20RFI%2016_Lit%20

Keeping these employees in the workforce will provide enormous economic benefits to businesses. Businesses—particularly small businesses—today are grappling with persistent worker shortages.[12] Incentivizing worker retention is a critical goal for all businesses to combat shortages. And when employers are able to retain their existing employees, it saves employers money on recruiting and training new employees.[13] *Amici* believe that the Final Rule promotes employee retention by improving employee health and wellbeing. Employees who are pregnant or experiencing related medical conditions will be able to stay in the workforce longer, should they so choose, with commonsense accommodations.[14] Employees now have more reassurance to seek the kinds of accommodations laid out in the Rule, knowing that their employer is required to accommodate them without retaliation. Employees who are pregnant and do not want to be are able to access accommodations they need to access abortions and return to work, without risking their jobs and livelihood.[15] And new parents will have the confidence to return to the workforce,

---

Review_Pregnancy%20and%20Parental%20Status%20Discrimination.pdf?ver=YSqHzfeHAHkwxDRwvVo3Cw%3D%3D.

[12] *Small-Business Labor Crisis Report 2023*, Ramsey Sols. 3 (2023), https://cdn.ramseysolutions.net/media/b2b/entre/article/the-small-business-labor-crisis/2023-small-business-labor-crisis-report-final.pdf (noting that 11.3 million small business owners report struggling to find the employees they need); Giulia Carbonaro, *America's Labor Shortage is Most Severe in These 13 States*, Newsweek (Aug. 10, 2023), https://www.newsweek.com/america-labor-shortage-most-severe-13-states-1818545.

[13] Shane McFeely & Ben Wigert, *This Fixable Problem Costs U.S. Businesses $1 Trillion*, Gallup (Mar. 13, 2019), https://www.gallup.com/workplace/247391/fixable-problem-costs-businesses-trillion.aspx (noting that "[t]he cost of replacing an individual employee can range from one-half to two times the employee's annual salary").

[14] *See Long Over Due: Exploring the Pregnant Workers' Fairness Act (H.R. 2694): Hearing Before the Subcomm. on Civil Rights and Human Services of the H. Comm. on Ed. & Lab.*, *supra* note 1, at 68 (testimony of Dina Bakst) ("Keeping pregnant workers attached to the workforce has also been a key reason for business support of state pregnant worker fairness legislation. For example, the Associated Industries of Massachusetts ("AIM"), which represents 3,500 member employers, took a strong statement in support of the Massachusetts Pregnant Workers Fairness Act.").

[15] This is all the more important since the Supreme Court's decision in *Dobbs*, which has made it even more difficult for employees in states with abortion bans to access reproductive health care.

11

knowing that their employer must provide them with a private place to pump breast milk[16] and accommodations to address any medical conditions that arise or are exacerbated following pregnancy.

Access to reproductive health care is also essential to furthering gender equality and economic growth. Research from *amicus curiae* Small Business Majority confirms the importance of that access to their members. Their research shows that access to reproductive health care, including abortion care, is critical to the ability of women entrepreneurs to start and grow their business while also contributing to their business' success and financial security.[17]

Providing accommodations as required by the PWFA and the Final Rule will also reduce worker time off and increase employee morale and productivity.[18] The accommodations required by the Rule will mean employees will not take unnecessary leaves of absence, which can create operational headaches for employers. And research suggests that employee accommodations, including pregnancy and breastfeeding accommodations, improve worker satisfaction and can increase productivity.[19] According to one survey, over half of employers who offered a workplace

---

Access to reproductive health care is critical to furthering gender equality and economic growth. Research from *amicus curiae* Small Business Majority confirms the importance of that access to their members. Their research shows that access to reproductive health care, including abortion care, is critical to the ability of women entrepreneurs to start and grow their business while also contributing to their business' success and financial security. Small Bus. Majority, *Opinion Poll: Women Entrepreneurs See Access to Reproductive Health as Essential to Their Economic Security*, at 4 (2023), https://smallbusinessmajority.org/sites/default/files/research-reports/2023-women-small-business-reproductive-health-report.pdf.

[16] Employees are also entitled to nursing accommodations under the Providing Urgent Maternal Protections for Nursing Mothers Act (PUMP Act). The PWFA expands those protections beyond just a year, and to employees not covered by the PUMP Act.

[17] Small Bus. Majority, *Opinion Poll*, *supra* note 15, at 2.

[18] *See* Dina Bakst et al., *Long Overdue: It Is Time for the Federal Pregnant Workers Fairness Act*, A Better Balance 22 (2019), https://www.abetterbalance.org/wp-content/uploads/2019/05/Long-Overdue.pdf.

[19] *Costs and Benefits of Accommodation*, Job Accommodation Network (Apr. 5, 2024), https://askjan.org/topics/costs.cfm (finding that offering employees accommodations resulted in

accommodation saw an increase in the employee's productivity, and 20 percent of employers saw an increase in overall company productivity.[20]

## CONCLUSION

The Pregnant Workers Fairness Act and the Final Rule provide a secure working environment for pregnant workers and new parents by encouraging them to remain in or reenter the workforce. Vacating or permanently enjoining the Final Rule, even in part, risks upending this carefully calibrated system. Employers and employees alike will be less confident in the governing rules, leading to confusion that will undermine the protections of the PWFA. For the foregoing reasons, the Court should deny Plaintiffs' Motions for Summary Judgment and grant Defendant's Motion.

Dated: November 19, 2024

Respectfully submitted,

*/s/ William Most*
William Most (La. Bar No. 36914)
MOST & ASSOCIATES
201 St. Charles Ave., Ste. 2500, #9685
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com

Kaitlyn Golden*
Carrie Y. Flaxman*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043

---

increased employee retention, increased employee productivity, and increased employee attendance); Colleen Payton et al., *Evaluation of Workplace Lactation Support Among Employers in Two Pennsylvania Cities*, 62 Bus. Horizons 579, 580 (2019), https://www.sciencedirect.com/science/article/pii/S0007681318301800#sec0115; *cf.* Margaret D. Whitley et al.*, Workplace Breastfeeding Support and Job Satisfaction Among Working Mothers in the United States*, 62 Am. J. Indus. Med. 716 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/pdf/nihms-1735888.pdf (finding work-related problems with breastfeeding are associated with low job satisfaction).

[20] *Costs and Benefits of Accommodation*, Job Accommodation Network, *supra* note 19.

Tel: (202) 448-9090
kgolden@democracyforward.org
cflaxman@democracyforward.org

*Admitted *Pro Hac Vice*

*Counsel for* Amici Curiae

14