# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, et al., *Plaintiffs*, v. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., *Defendants*. | No. 2:24-cv-691-DCJ-TPL<br><br>Judge David C. Joseph<br><br>Magistrate Judge Thomas P. LeBlanc |

## BISHOPS' REPLY IN SUPPORT OF
## MOTION FOR AN INJUNCTION PENDING APPEAL

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

I.   The Bishops have demonstrated irreparable harm. ...............................................2

II.  The Bishops are entitled to relief against right-to-sue letters. ..............................7

CONCLUSION ................................................................................................................10

CERTIFICATE OF COMPLIANCE ...............................................................................12

CERTIFICATE OF SERVICE ........................................................................................13

i

## INTRODUCTION

EEOC's concessions resolve this motion. The Commission nowhere disputes that federal law requires the Bishops to comply with a broad, unprecedented abortion-accommodation mandate. Nor does it dispute that, absent this Court's temporary protection, the Bishops are required by law to change their ministries *now* to obey that mandate and are daily accruing liability for failing to comply with the law. EEOC also does not dispute that the Bishops remain unprotected by the kinds of injunctive relief that every other court to consider a religious objector's challenge to the Final Rule has granted. *And* EEOC leaves uncontested that the abortion-accommodation mandate is in obvious violation of the First Amendment, RFRA, and the PWFA itself. Thus, EEOC has made it straightforward for this Court to extend the temporary injunction that it has just entered through the pendency of the appeal. ECF 137.

EEOC's attempts to dodge the merits are as meritless as they are telling. EEOC first claims that there is no irreparable harm from delay. But even "minimal" delay "unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2364 (2025). Pivoting, EEOC claims the Bishops have slept on their rights. Far from it: the Bishops opposed the abortion-accommodation mandate during the regulatory process *and* were the first religious parties in the nation to seek judicial relief when EEOC rejected their entreaties. And the Bishops should be praised, not punished, for first trying to negotiate adequate relief from the EEOC before seeking it in court.

Nor is EEOC's late-breaking "offer[ ]" not to engage in *some* forms of enforcement somehow adequate. Individual EEOC Commissioners retain the authority to use the Commission's muscle against the Bishops. And as EEOC repeatedly stresses, it wishes to give anyone who asks a permission slip to sue the Bishops under this Court's version of the abortion-accommodation mandate—raising the prospect of liability imposed by private parties who wish to reorder the Bishops' ministries and force them to accommodate abortion within their own workplaces. Further, as organizations which must regularly certify their compliance with federal law, the Bishops need confirmation that they are. This Court should extend its just-issued injunction to provide durable protection to the Bishops through the pendency of the appeal.

1

## ARGUMENT

**I.     The Bishops have demonstrated irreparable harm.**

EEOC never denies that the Bishops' First Amendment rights are being violated right now. That's dispositive on irreparable harm: "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud*, 145 S. Ct. at 2364. Yet EEOC insists that the infringement of First Amendment rights is just "not … serious enough" to justify relief. Resp.3.

That is wrong. As the Fifth Circuit noted, "grave First Amendment interests [are] at stake." ECF 135 at 2. The Bishops are suffering irreparable harm right now. Without this Court's continued protections, the Bishops will accrue more potential liability by the day under federal law that requires the ministries of the Catholic Church to accommodate abortion without providing any protection for the Church's millennia-old religious beliefs—"forc[ing]" the Bishops "to choose between two untenable alternatives: either (1) violate [the PWFA] and obey their convictions or (2) obey [the PWFA] and violate their convictions." *Braidwood Mgmt. v. EEOC*, 70 F.4th 914, 937-38 (5th Cir. 2023). The First Amendment does not tolerate that result.

***Ongoing threat.*** EEOC suggests irreparable harm cannot exist absent evidence that an employee has filed (or is likely to file) a charge relating to abortion accommodations. Resp.3. *Braidwood* rejected an identical argument. 70 F.4th at 926. So has *every other court* considering parallel challenges to the Final Rule. *See, e.g.*, *Catholic Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1022-23; *Stanley M. Herzog Found. v. EEOC*, No. 4:24-cv-651, 2025 WL 1734470, at *6 (W.D. Mo. Mar. 18, 2025); *see also Tennessee v. EEOC*, 129 F.4th 452, 458 (8th Cir. 2025) (recognizing duty to immediately comply with mandate). As in *Braidwood*, the Bishops "admit they are breaking EEOC guidance"; "[t]hey posit statutory and constitutional issues" with that guidance; and "[t]hose issues … are already forcing [them] to choose either to restrict their religious practices or to risk potential penalties." 70 F.4th at 926. Nor can pressuring the Bishops to "endorse non-conforming religious behavior for any period" be remedied with damages. *Id.* at 932 n.33. By the time that a charge is filed, in other words, the harm has already occurred—the

2

Bishops have already accrued the potential liability and are left to hope for the best in front of the EEOC and, eventually, federal courts. *See id.* at 926. That plainly is "irreparable injury." *Id*.

That's alone sufficient. But this case is an even clearer harm than *Braidwood* in at least two ways. First, EEOC and private plaintiffs *already* have a track record of imposing irreparable harm on the Bishops. *See EEOC v. Catholic Univ.*, 83 F.3d 455, 466 (D.C. Cir. 1996). Second, despite EEOC's apparent insistence that the Bishops should be content to continue operating with policies that EEOC claims violate federal law, *but see Tennessee*, 129 F.4th at 458, that's simply not possible at a practical level: the Bishops regularly apply for federal contracts and grants, which requires them to certify their compliance with federal law on a rolling basis. *See*, *e.g.*, U.S. Health Resources & Services Admin., *Financial Assistance General Certifications and Representations*, https://perma.cc/F4Y8-K7JH ("standard certification" requiring grant recipient to annually "attest[ ]" that it is in compliance "with all applicable requirements of all other federal laws," including federal accommodation and nondiscrimination laws); *see also Prime Award Results,* USASpending.gov, https://perma.cc/8EC5-UQQV (listing federal contracts and grants awarded to CUA, including from HRSA). The Bishops need clarity now.

EEOC's proposal that the Bishops raise their defenses in a future dispute is likewise too little, too late. Resp.7. Federal law requires the Bishops *right now* to "broadly change" their religious "employment policies" (even their internal "atmosphere," *Implementation of Pregnant Workers Fairness Act,* 89 Fed. Reg. 29,096, 29,214 (Apr. 19, 2024)) or else "risk potential penalties." *Braidwood*, 70 F.4th at 926, 938. "Without resolution," then, those "penalties hang over plaintiffs' heads like Damocles's sword." *Id.* at 928. That's why the Fifth Circuit has repeatedly rejected this type of plea to postpone review. *Braidwood*, 70 F.4th at 929-30; *Franciscan All. v. Becerra*, 47 F.4th 368, 376-77 (5th Cir. 2022). Nor is more time needed to properly adjudicate the Bishops' civil rights. This Court can already "see the potential harms, adjudicate on the facts presented, and grant any appropriate concrete relief." *Braidwood*, 70 F.4th at 930.

Similar problems infect EEOC's late-breaking "offer[ ] not to pursue" abortion "charge[s] against the Bishops." Resp.4. Setting aside the shaky reliability of that new position, *see Samuels*

3

*v. Trump*, No. 25-cv-1069 (D.D.C.) (ongoing challenge to the legality of EEOC Commissioner Samuels' removal, which may again change EEOC's recent posture), and accepting the "offer" at face value, it is facially inadequate. For one thing, as EEOC admits, a single Commissioner can "instigate a charge on her own," Resp.3—and EEOC's current Commissioners include one who voted in favor of the Final Rule. *See Texas v. EEOC*, No. 2:24-cv-173, 2025 WL 1414332, at *8 (N.D. Tex. May 15, 2025) (finding single-commissioner charge evidence of harm). For another, EEOC repeatedly insists that it will issue right-to-sue notices to private plaintiffs allowing them to sue the Bishops under the abortion-accommodation mandate. Resp.4-8. Private plaintiffs dominate employment-law filings. *See* EEOC, *2024 Annual Performance Report*, https://perma.cc/3Q8P-SFDN (last year EEOC received 88,531 charges but filed just 111 enforcement actions). And here, EEOC's amici represent over *three hundred thousand* entities, who insist that the abortion-accommodation mandate should be immediately imposed on the Bishops. ECF 31-2 at 1-4; *accord* ECF 34-1 at 1 (emphasizing "dedicat[ion]" to "robust enforcement"). Finally, regardless of EEOC's "offer," the Bishops still need confirmation that they are not in violation of federal law and are not accruing liability for failing to accommodate abortion.

So too with Commissioner Lucas' commendable but facially inadequate speculation that the Final Rule might change in some ways one day in the future. ECF 113 at 34 (citing statement). Every other court to consider EEOC's argument on that score has rejected it. *See, e.g., Catholic Benefits Ass'n*, 732 F. Supp. 3d at 1022-23; *Herzog Found.*, 2025 WL 1734470, at *6. *Potential future* changes to the Final Rule cannot remove the *concrete*, *here-and-now* burdens on the Bishops' religious practices, particularly when those burdens are now rooted in the PWFA itself.

And prophecies of change on these kinds of issues understandably ring hollow to the Catholic Church, which can be forgiven for distrusting federal agencies when they promise that they will eventually get around to protecting civil rights. Over a decade ago, the Obama administration's agencies inserted a contraceptive mandate into the Affordable Care Act and promised to *later* issue protections for religious objectors like the Little Sisters of the Poor. But those promises went unfulfilled across multiple administrations, provoking litigation that still continues *today* despite

4

multiple rebukes from the Supreme Court. *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 687 (2020) (lamenting, five years ago, that religious objectors had already "had to fight" for "seven years"). Most recently, the federal government obtained judicial delay in active litigation by promising for *four years* that it was going to change the contraception rule, but it never did. And now, after years of waiting, a federal court has invalidated an exemption crafted to protect religious ministries—while simultaneously refusing to rule on First Amendment and RFRA arguments, leaving religious objectors subject to a contraception mandate without corresponding religious liberty protections. *Pennsylvania v. Trump*, —F. Supp. 3d—, 2025 WL 2349798 (E.D. Pa. Aug. 13, 2025). Nor is that an isolated example. *See* Mark L. Rienzi, *Fool Me Twice: Zubik v. Burwell and the Perils of Judicial Faith in Government Claims*, 2016 Cato Sup. Ct. Rev. 123, 144-52 (2016). Thus, federal courts have rightly become reluctant to be complicit in letting agencies hold "Damocles' sword" over religious objectors. *Braidwood*, 70 F.4th at 928; *see also Catholic Benefits Ass'n*, 732 F. Supp. 3d at 1022-23; *Herzog Found.*, 2025 WL 1734470, at *6.

**Status quo.** Nor would an injunction somehow "upset the *status quo*." Resp.3. To the contrary: The Bishops need an injunction to *restore* it. This Court's preliminary injunction included an express ruling about the substantive scope of the PWFA's religious exemption, protecting the Bishops from having to provide abortion accommodations. *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 662-63 (W.D. La. 2024). This Court correctly explained that EEOC had "failed to include a broad religious exception in the Final Rule," which "d[id] not square with the PWFA" and left the Bishops exposed to "protracted investigations and litigation." *Id.* The analysis "conclude[d] the *Bishops* Plaintiffs have demonstrated a substantial likelihood of success on their claims of statutory and constitutional overreach." *Id.* at 663. Because the Court so strongly protected their religious beliefs, the Bishops had no need to "appeal[ ] the preliminary injunction order." Resp.3.

That strong protection was the past year's *status quo*—the same one that existed for the entirety of our nation's history before the Final Rule. But the *status quo* was disrupted at summary judgment. *But see* Resp.3 (incorrectly asserting that "this Court's preliminary injunction … continues unchanged"). There, the Court altered its holding regarding the religious

5

exemption, concluding that the preliminary-injunction decision was about *standing*, not the merits. *See* ECF 113 at 34 (concluding that the preliminary injunction merely held that the "religious exemption in the Final Rule provided the *Bishops* Plaintiffs with standing"). At the same time, the Court issued a final judgment stating that the Bishops must accommodate any abortion "stemming from the underlying treatment of a medical condition related to pregnancy"—a broad abortion-accommodation mandate that requires the Bishops to accommodate abortions arising from modest or minor cases of anxiety, nausea, or changes in hormone levels. ECF 113 at 39 n.24; ECF 114 at 3 n.1; *see* ECF 125-1 at 2 (explaining scope of the abortion-accommodation mandate). And unlike with the preliminary injunction, the Court provided no protection for the Bishops' religious beliefs against accommodating such abortions, declining to rule on not only the religious exemption, but also the Bishops' claims under RFRA and the First Amendment. ECF 113 at 35 & n.23.

It is the prior *status quo* that the Bishops now seek to restore, before the summary judgment order exposed them to liability for living out their faith within their own ministries.

**Promptness.** EEOC also complains about the Bishops' speed in asking for relief. Resp.3. But EEOC doesn't dispute that the request (and the appeal) is timely, nor that the Bishops' First Amendment rights are actively being chilled. *See id.* Even if the Bishops could have appealed sooner, that does not somehow nullify irreparable harm—particularly where "First Amendment rights [are] being chilled daily" and the Bishops' "injuries" are "ongoing." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (one-year delay in suing and seeking injunction not "particularly probative"). That's why courts in parallel cases have rejected EEOC's similar delay-based arguments, rightly recognizing that an injunction would still return the religious objectors "to the status quo" that existed "before the Final Rule." *Catholic Benefits Ass'n*, 732 F. Supp. 3d at 1027; *see Herzog Found.*, 2025 WL 1734470, at *13 (rejecting arguments over "roughly four-month delay" in filing suit and "additional two-month delay" seeking injunction).

Further, EEOC's argument would penalize the Bishops for being reasonable. This Court's order provided that "[a]ny further relief requested by the parties will be addressed at a status conference scheduled" a few weeks after the decision. ECF 113 at 37-38. Rather than immediately seek

6

judicial relief, the Bishops reasonably sought to determine at the status conference if its understanding of the summary judgment was correct and if any necessary relief could be obtained promptly from this Court or EEOC. After it became apparent that prompt relief was not forthcoming, and ensuing discussions with the EEOC failed, the Bishops sought protection pending appeal.

## II. The Bishops are entitled to relief against right-to-sue letters.

Perhaps sensing that the Bishops' religious beliefs are entitled to judicial protection, EEOC next tries to narrow the remedy. Any relief, the Commission asserts, should not preclude it from giving permission slips to private parties who wish to sue the Bishops to enforce the abortion-accommodation mandate. Resp.4-8. This Court already rejected that argument once, and it should do so again. *Louisiana*, 705 F. Supp. 3d at 664 (enjoining right-to-sue letters).

Though EEOC protests that it and the "public" will suffer "hardships" if the Commission cannot issue the notices, its own behavior proves otherwise. As the Commission confesses, multiple courts—including this one—have entered injunctions in similar cases against issuing the notices. Resp.6. Despite all its handwringing here, EEOC did not appeal those injunctions, including one that has since become permanent. *See Louisiana*, 705 F. Supp. 3d at 664 (preliminary barring issuance of right-to-sue notices); *Herzog Found.*, 2025 WL 1734470, at *14 (same); *Catholic Benefits Ass'n v. Lucas*, No. 1:24-cv-142, 2025 WL 1144768, at *4 (D.N.D. Apr. 15, 2025) (permanent bar). EEOC cannot plausibly claim it is "irreparabl[y] harm[ed]" by an injunction when it has done nothing to try to fix them. Resp.7.

Instead of appealing the injunctions, EEOC now accuses them of being conclusory. Resp.7. But so too is its starring opinion in *Dr. James Dobson Family Institute v. Kennedy*, which spent one sentence on the issue, stating: "Additionally, because the EEOC is statutorily required to issue notice-of-right-to-sue letters … even when [it does] not pursue enforcement, the Court does not enjoin Defendants from issuing NRTS letters." Order at 25, No. 4:24-cv-986 (N.D. Tex. Aug. 8, 2025), ECF 35. But as shown by EEOC's newfound willingness to temporarily pause certain forms of enforcement, it is quite content to pick and choose which statutory duties it believes override

7

the First Amendment, RFRA, and the PWFA. Regardless, this Court has a "duty" too—to uphold the Constitution where statutes conflict with it. *See Combs v. Cent. Texas Ann. Conf. of United Methodist Church*, 173 F.3d 343, 351 (5th Cir. 1999) ("In such circumstances, the constitutional mandate must override the mandate that is merely congressional."). And here, "grave First Amendment interests [are] at stake" when private parties are given the ability to sue the Bishops to enforce EEOC's abortion-accommodation mandate. ECF 135 at 2.

Further, given the extraordinarily sensitive issues at stake—the internal ministry statements of faith, policies, and employment expectations of the Catholic Church on issues of abortion—subjecting the Bishops to any such "proceeding *is* the injury." *Space Expl. Techs. Corp. v. NLRB*, —F.4th —, 2025 WL 2396748, at *13 (5th Cir. Aug. 19, 2025). "The harm is not downstream from the process—it *is* the process." *Id.* As the Fifth Circuit has recognized, the First Amendment's protections for a religious institution's faith, doctrine, and governance are "structural."[1] *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018); *see also, e.g.*, *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836-37 (6th Cir. 2015) (church autonomy is a "structural" limit "that categorically prohibits federal and state governments from" "interfer[ing] with the internal governance of the church"). Allowing "an opponent" to challenge the Bishops' "decision-making processes on a matter of intense doctrinal concern" guarantees "ongoing intrusions against [the Bishops'] self-government." *Whole Woman's Health*, 896 F.3d at 373.

The First Amendment requires otherwise. "It is not only the conclusions that may be reached … which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *NLRB v. Catholic Bishop* 440 U.S. 490, 502 (1979). The Fifth Circuit has accordingly recognized that when private litigants exercise the power of the government to "investigat[e]" important internal religious decisions, they "necessarily intrude into church governance in a manner that [is] inherently coercive," which "is

---

[1] For that reason, EEOC's effort to distinguish *Texas v. Garland* fails. 719 F. Supp. 3d 521, 598 (N.D. Tex. 2024), *rev'd on other grounds sub nom. Texas v. Bondi*, No. 24-10386, 2025 WL 2374900 (5th Cir. Aug. 15, 2025). In *Texas*, the alleged structural constitutional defect had to do with Congress's authority to pass the PWFA. *See id.* Here, the structural constitutional defect has to do with the First Amendment harms imposed by greenlighting private litigation to impose an abortion-accommodation mandate.

8

enough to bar the involvement of the civil courts." *Combs*, 173 F.3d at 350; *see also Markel v. Union of Orthodox Jewish Congregations of Am.*, 124 F.4th 796, 808-10 (9th Cir. 2024) (stressing the "coercive nature" of private litigation and observing that the "process of judicial inquiry itself" imposes harms).

That describes this case. It doesn't matter whether *prosecutor* or *plaintiff* initiates the "investigation and review" of the Bishops' religious "practices and decisions"—the process of investigation can still "cause the State to intrude upon matters of church administration and government," which "produce[s] by its coercive effect the very opposite" of the "separation of church and State." *McClure v. Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972). And here, most of the coercive effects of the unprecedented and intrusive litigation authorized by EEOC's Final Rule come from private plaintiffs, who file the overwhelming majority of employment-law cases. *See supra* at 4; ECF 83-4 ¶¶ 15-19 (detailing costs and intrusions tied to compliance with the Final Rule); ECF 83-2 ¶¶ 15-24 (same). So an injunction against merely *EEOC* enforcement is insufficient to protect the Bishops or to undo the harm that EEOC has created. While "[t]he EEOC" would certainly—and properly—remain "free to issue letters to employees saying the investigation cannot move forward by court order," *Catholic Benefits Ass'n*, 732 F. Supp. 3d at 1029, it should not be allowed to take steps that are formally required to *authorize* litigation against the Bishops. And that is doubly true since, again, EEOC does not dispute that any such litigation *violates the First Amendment and federal law*.

EEOC responds by speculating that private plaintiffs might try to sidestep the administrative process and sue the Bishops anyway. Resp.5-6. But that only proves why an injunction against such notices would provide the Bishops with meaningful protection—as EEOC implicitly admits, it generally *would* prevent the Bishops from having to face entangling private litigation over their religious beliefs, *unless* an equitable argument somehow succeeded. *Id.*

Nor would the Bishops somehow receive better "certainty" if private parties could sue them. Resp.8. The "certainty" that the Bishops need, of course, is the certainty that their religious beliefs

9

will not be put to an unconstitutional trial. EEOC's paternalistic suggestion that the Bishops would benefit from a narrower injunction is implausible on its face.

\* \* \*

Finally, EEOC's own arguments confirm that the harm imposed by private litigation is real—and remediable. As to the harm, the Commission has repeatedly emphasized that private parties can enforce its abortion-accommodation mandate against the Bishops. *See* ECF 29 at 10 (using this point to support an argument on redressability); ECF 62-1 at 4; ECF 75-1 at 14; ECF 81 at 14-15; ECF 89 at 6-7 (all same). And as to the remedy, EEOC admits that an injunction against issuance of the notices really would give the Bishops' religious practices meaningful protection—leaving private litigants to lean on flimsy theories about "equitable exceptions" to bring undisputedly illegal suits. Resp.5-6. This Court should enjoin issuance of the notices once again.

## CONCLUSION

The Bishops respectfully request that this Court, consistent with the injunction that it has entered pending resolution of this motion, ECF 137, now issue an injunction pending appeal providing that:

1. Defendants are enjoined from interpreting or enforcing the Pregnant Workers Fairness Act (42 U.S.C. § 2000gg *et seq.*), the Final Rule (29 C.F.R. § 1636.1 *et seq.*), or its implementing regulations or guidance (*see*, *e.g.*, *Implementation of Pregnant Workers Fairness Act,* 89 Fed. Reg. 29,096 (Apr. 19, 2024)), against the Bishops in a way that would require or pressure them to accommodate abortions in violation of the Bishops' sincerely held religious beliefs; and

2. Defendants are enjoined from initiating investigations against the Bishops (including pursuant to a commissioner charge, 42 U.S.C. § 2000e-5(b)), regarding allegations that the Bishops have failed to accommodate abortions as required by the laws, regulations, or guidance in Paragraph 1; and

3. Defendants are enjoined from issuing any Notice of Right to Sue on claims or charges on grounds that the Bishops have failed to accommodate abortions as required by the laws, regulations, or guidance in Paragraph 1.

Respectfully submitted,

/s/ Daniel H. Blomberg

| | |
|---|---|
| James R. Conde | Daniel H. Blomberg |
| (W.D. La. Temporary Bar No. 918116) | (W.D. La. Temporary Bar No. 918117) |
| Boyden Gray PLLC | *Trial Attorney* |
| 800 Connecticut Ave. NW, Suite 900 | /s/ Michael J. O'Brien |
| Washington, DC 20006 | Michael J. O'Brien |
| Phone: (202) 955-0620 | (LA Bar No. 38852) |
| Fax: (202) 955-0621 | Laura Wolk Slavis |
| jconde@boydengray.com | (W.D. La. Temporary Bar No. 918118) |
| | Andrea R. Butler |
| | (W.D. La. Temporary Bar No. 918119) |
| | Jordan T. Varberg |
| | (W.D. La. Temporary Bar No. 918120) |
| | The Becket Fund for Religious Liberty |
| | 1919 Pennsylvania Ave. NW, Suite 400 |
| | Washington, DC 20006 |
| | Phone: (202) 955-0095 |
| | Fax: (202) 955-0090 |
| | dblomberg@becketfund.org |

*Counsel for Bishops Plaintiffs*

Dated: August 28, 2025

11

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the length limitations of Local Rule 7.8 because, excluding the parts exempted by Local Rule 7.8, it is ten pages.

/s/ Daniel H. Blomberg
Daniel H. Blomberg
  (W.D. La. Temporary Bar No. 918117)
  *Trial Attorney*
/s/ Michael J. O'Brien
Michael J. O'Brien
  (LA Bar No. 38852)

Dated: August 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2025, the foregoing was electronically filed via email to Lawdml_emergencyfiling@lawd.uscourts.gov, as instructed by the Clerk's Office, due to a service outage affecting the Court's CM/ECF system. Counsel for Defendants was copied on the email using the email address below:

Jacob S. Siler (jacob.s.siler@usdoj.gov)

/s/ Daniel H. Blomberg
Daniel H. Blomberg
 (W.D. La. Temporary Bar No. 918117)
 *Trial Attorney*
/s/ Michael J. O'Brien
Michael J. O'Brien
 (LA Bar No. 38852)

Dated: August 28, 2025