**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, *et al.*,<br><br>　　　　　*Plaintiffs*,<br><br>　v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *et al.*,<br><br>　　　　　*Defendants*. | Case No. 2:24-cv-691-DCJ-TPL<br>Judge David C. Joseph<br>Magistrate Judge Thomas P. LeBlanc |

**<u>DEFENDANTS' RESPONSE TO BISHOPS PLAINTIFFS'</u>**
**<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

I. THE PWFA ......................................................................................................................2

II. THE FINAL RULE ...........................................................................................................3

III. PROCEDURAL HISTORY ...............................................................................................4

IV. STATEMENT OF DISPUTED FACTS ............................................................................5

STANDARD OF REVIEW .............................................................................................................5

ARGUMENT....................................................................................................................................5

I. REQUIRING THE BISHOPS TO ASSERT RELIGIOUS RIGHTS AS A
   DEFENSE TO A PWFA CHARGE DOES NOT VIOLATE RFRA ..................................5

    A. The Final Rule's Case-by-Case Approach for Evaluating RFRA Defenses Is
   Not a Substantial Burden .................................................................................................6

    B. The EEOC's Application of Religious Defenses Is Supported by a
   Compelling Interest..........................................................................................................9

    C. The EEOC's Case-By-Case Approach to Religious Defenses Is the Least
   Restrictive Means...........................................................................................................11

II. THE EEOC'S INTERPRETATION OF THE PWFA'S RULE OF
   CONSTRUCTION SATISFIES APA REVIEW ..........................................................12

III. THE PWFA DOES NOT CATEGORICALLY VIOLATE THE CHURCH
   AUTONOMY DOCTRINE ...........................................................................................14

IV. THE PWFA SATISFIES THE FIRST AMENDMENT ...............................................17

    A. The PWFA Does Not Categorically Infringe the Bishops' Free
   Exercise Rights...............................................................................................................17

    B. The PWFA Does Not Categorically Violate the Free Speech Clause. ..........................19

V. THE COURT SHOULD NOT GRANT ALL OF PLAINTIFFS'
   REQUESTED REMEDIES.............................................................................................20

CONCLUSION...............................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Gardner-Denver Co.,*
    415 U.S. 36 (1974) ........................................................................................................ 3

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006) ............................................................................................... 13, 17

*Bear Creek Bible Church v. EEOC,*
    571 F. Supp. 3d 571 (N.D. Tex. 2021) ............................................................... 18

*Blum v. Bacon,*
    457 U.S. 132 (1982) ...................................................................................................... 5

*Bostock v. Clayton County,*
    590 U.S. 644 (2020) ...................................................................................................... 7

*Bouldin v. Alexander,*
    15 Wall. 131 (1872) ................................................................................................... 14

*Boy Scouts of Am. v. Dale*
    530 U.S. 640 (2000) ................................................................................................... 19

*Boy Scouts of Am. v. Wyman,*
    335 F.3d 80 (2d Cir. 2003) ..................................................................................... 19

*Braidwood Mgmt., Inc. v. EEOC,*
    70 F.4th 914 (5th Cir. 2023) ......................................................................... 7, 8, 18

*Burwell v. Hobby Lobby Stores, Inc.,*
    573 U.S. 682 (2014) ...................................................................................................... 7

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ................................................................................................... 21

*Cath. Benefits Ass'n v. Burrows,*
    732 F. Supp. 3d 1014 (D.N.D. 2024) ............................................................... 5, 24

*Clackamas Gastroenterology Assocs., P.C. v. Wells,*
    538 U.S. 440 (2003) ............................................................................................... 11, 18

*Cline v. Cath. Diocese of Toledo,*
    206 F.3d 651 (6th Cir. 2000) ................................................................................. 13

*Combs v. Central Tex. Annual Conf. of United Methodist Church,*
    173 F.3d 343 (5th Cir. 1999) ................................................................................. 13

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
603 U.S. 799 (2024) ............................................................................................... 24

*Curay-Cramer v. Ursuline Academy*,
450 F.3d 130 (3d Cir. 2006) ..................................................................... 16, 17, 19

*Cutter v. Wilkinson*,
544 U.S. 709 (2005) .............................................................................................. 10

*Darren Patterson Christian Acad. v. Roy*,
699 F. Supp. 3d 1163 (D. Colo.) ........................................................................... 19

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
45 F.4th 846 (5th Cir. 2022) ................................................................................. 22

*Duquesne Univ. of the Holy Spirit v. NLRB*,
947 F.3d 824 (D.C. Cir. 2020) .............................................................................. 17

*EEOC v. Aramco*,
499 U.S. 244 (1991) .............................................................................................. 13

*EEOC v. Cath. Univ.*,
83 F.3d 455 (D.C. Cir. 1996) .................................................................................. 9

*EEOC v. Miss. Coll.*,
626 F.2d 477 (5th Cir. 1980) ........................................................... 11, 13, 14, 16

*Employment Division v. Smith*,
494 U.S. 872 (1990) .............................................................................................. 19

*Fort Bend Cnty., Texas v. Davis*,
587 U.S. 541 (2019) .............................................................................................. 22

*Fowlkes v. Ironworkers 40*,
790 F.3d 378 (2d Cir. 2015) ................................................................................. 23

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ................................................................................... 8

*Franciscan All., Inc. v. Becerra*,
553 F. Supp. 3d 361 (N.D. Tex. 2021) .................................................................... 7

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ........................................................................................ 17, 18

*Gen. Conf. of Seventh-day Adventists v. Horton*,
787 F. Supp. 3d 99 (D. Md. 2025) ........................................................................ 18

*Gonzalez v. Firestone Tire & Rubber Co.*,
610 F.2d 241 (5th Cir. 1980) ................................................................................ 25

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ................................................................................................ 7, 10

*Groff v. DeJoy*,
    600 U.S. 447 (2023) ..................................................................................................... 19

*Hayes v. N.J. Dep't of Hum. Servs.*,
    108 F.4th 219 (3d Cir. 2024) ..................................................................................... 25

*Holt v. Hobbs*,
    574 U.S. 352 (2015) ..................................................................................................... 10

*Hosanna-Tabor Evangelical Lutheran Church v. EEOC*
    565 U.S. 171 (2012) ............................................................................................... 14, 16

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*,
    499 U.S. 187 (1991) ...................................................................................................... 3

*Kedroff v. St. Nicholas Cathedral*,
    344 U.S. 94 (1952) ...................................................................................................... 14

*Little v. Wuerl*,
    929 F.2d 944 (3rd Cir. 1991) ..................................................................................... 19

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    591 U.S. 657 (2020) ....................................................................................................... 7

*Louisiana v. EEOC*,
    705 F. Supp. 3d 643 (W.D. La. 2024) ....................................................................... 4, 9

*Louisiana v. EEOC*,
    784 F. Supp. 3d 886 (W.D. La. May 21, 2025) ................................................... 4, 5, 21

*Lozano v. Collier*,
    98 F.4th 614 (5th Cir. 2024) ..................................................................................... 6, 7

*McRaney v. N. Am. Mission Bd. of the S. Baptist Conv.*,
    No. 23-60494, 2025 WL 3012553 (5th Cir. Oct. 28, 2025) ......................................... 16

*Newsome v. EEOC*,
    37 F. App'x 87 (5th Cir. 2002) ................................................................................... 24

*NLRB v. Bell Aerospace Co.*,
    416 U.S. 267 (1974) ..................................................................................................... 13

*Order of R.R. Telegraphers v. Ry. Express Agency*,
    321 U.S. 342 (1944) ..................................................................................................... 24

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    591 U.S. 732 (2020) ..................................................................................................... 14

iv

*Our Lady's Inn v. City of St. Louis*,
 349 F. Supp. 3d 231 (E.D. Mo. 2018) ................................................................. 19

*Priests for Life v. HHS*,
 7 F. Supp. 3d 88 (D.D.C. 2013) ........................................................................ 19

*Purl v. U.S. Dep't of Health & Hum. Servs.*,
 No. 2:24-cv-228-Z, 2025 WL 1708137 (N.D. Tex. June 18, 2025) ...................... 8

*Religious Sisters of Mercy v. Cochran*,
 Nos. 3:16-cv-386 & 3:16-cv-432, 2021 WL 1574628 (D.N.D. Feb. 19, 2021) ............ 23

*Scott v. Gino Morena Enters., LLC*,
 888 F.3d 1101 (9th Cir. 2018) .......................................................................... 25

*Servian Eastern Orthodox Diocese v. Milivojevich*,
 426 U.S. 696 (1976) ........................................................................................ 14

*Shekoyan v. Sibley Int'l*,
 409 F.3d 414 (D.C. Cir. 2005) .......................................................................... 13

*Slattery v. Hochul*,
 61 F.4th 278 (2d Cir. 2023) .............................................................................. 19

*Stanley M. Herzog Found. v. EEOC*,
 No. 4:24-cv-00651, 2025 WL 1734470 (W.D. Mo. Mar. 18, 2025) ..................... 24

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
 41 F.4th 931 (7th Cir. 2022) ............................................................................. 13

*Tandon v. Newsom*,
 593 U.S. 61 (2021) ..................................................................................... 17, 18

*Texas v. Garland*,
 719 F. Supp. 3d 521 (N.D. Tex. 2024) .............................................................. 23

*Trump v. CASA, Inc.*,
 145 S. Ct. 2540 (2025) ..................................................................................... 21

*United States v. Lee*,
 455 U.S. 252 (1982) ........................................................................................ 11

*Zipes v. Trans World Airlines, Inc.*,
 455 U.S. 385 (1982) ........................................................................................ 23

**Statutes**

5 U.S.C. § 703 .................................................................................................... 22

5 U.S.C. § 704 .................................................................................................... 21

29 U.S.C. § 630 .................................................................................................. 11

29 U.S.C. § 2611 ................................................................................................................ 11, 18

42 U.S.C. § 2000bb-1 .......................................................................................................... 6, 7

42 U.S.C. § 2000e ............................................................................................................... 11, 18

42 U.S.C. § 2000e-1 ............................................................................................................ 2, 12

42 U.S.C. § 2000e-3 ............................................................................................................... 2

42 U.S.C. § 2000e-5 ........................................................................................................ 2, 22, 24

42 U.S.C. § 2000gg ................................................................................................................ 2

42 U.S.C. § 2000gg-1 ......................................................................................................... 2, 18

42 U.S.C. § 2000gg-2 ......................................................................................................... 2, 22

42 U.S.C. § 2000gg-3 ............................................................................................................. 3

42 U.S.C. § 2000gg-5 ..................................................................................................... 11, 12, 19

42 U.S.C. § 12111 ............................................................................................................... 11, 18

42 U.S.C. § 12203 ................................................................................................................... 2

**Rules**

Fed. R. Civ. P. 56 ................................................................................................................. 5

**Regulations**

29 C.F.R. § 1636.7 ................................................................................................................ 12

*Implementation of the Pregnant Workers Fairness Act*,
89 Fed. Reg. 29,096 (Apr. 19, 2024) ............................................................................... *passim*

**Other Authorities**

*Brittany Bull Panuccio Begins Tenure as EEOC Commissioner*, U.S. Equal Employment Opportunity
    Commission, available at https://www.eeoc.gov/newsroom/brittany-bull-panuccio-begins-
    tenure-eeoc-commissioner ........................................................................................... 21

EEOC, Compliance Manual on Religious Discrimination, (12-I)(C) (2021), available at
    https://perma.cc/GJ6R-BLZL ...................................................................................... 19, 20

*Position of Acting Chair Lucas Regarding the Commission's Final Regulations Implementing
    the Pregnant Workers Fairness Act*, U.S. Equal Employment Opportunity Commission,
    https://www.eeoc.gov/wysk/position-acting-chair-lucas-regarding-commissions-final-
    regulations-implementing-pregnant (last visited Sept. 8, 2025) ...................................... 21

**INTRODUCTION**

This case is not about *whether* the Bishops are entitled to a defense to claims arising under the Pregnant Workers Fairness Act ("PWFA"), but *when* that issue will be decided.  The Equal Employment Opportunity Commission ("EEOC") does not disagree that the Bishops have substantial religious rights, including under the Religious Freedom Restoration Act ("RFRA"), the PWFA itself, and the First Amendment's religion clauses.  In particular cases, those rights will provide a valid defense against any PWFA claim that they failed to provide an accommodation to which they have a religious objection.  The Final Rule that the Bishops here challenge, *Implementation of the Pregnant Workers Fairness Act*, 89 Fed. Reg. 29,096 (Apr. 19, 2024) ("Final Rule"), acknowledged those defenses and explained that the EEOC would promptly consider them when asserted in response to a specific charge against a specific employer.  The parties are in firm agreement that the Bishops need not provide accommodations that conflict with their religious practice when a statutory or constitutional religious defense applies.  Nor must they update their policies or workplace practices in response to the Final Rule in such circumstances.

The Bishops' arguments are all predicated on the notion that, as a religious organization, they are exempt from the EEOC charge process from the outset.  But neither the statutory exemptions they cite nor the constitutional principles they invoke provide organizations—even religious organizations like the Bishops—with blanket immunity before they even invoke a religious defense against a specific charge.  The Bishops may very well be correct that providing certain pregnancy-related employment accommodations would burden their religious practices and views in some cases.  They may also be correct that those accommodations burden their religious practices in every case.  What they have not shown, however, is that the PWFA or the EEOC's interpretation of it violates their statutory or constitutional rights in all cases by requiring them to assert those rights in defense of a specific charge.  And because of that, their partial motion for summary judgment should be denied.

1

**BACKGROUND**

I.    **THE PWFA**

The PWFA requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless . . . the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 2000gg-1(1). In doing so, the PWFA borrows heavily from existing statutes. For example, Congress defined both "reasonable accommodation" and "undue hardship" by reference to the Americans with Disabilities Act ("ADA"). *See id.* § 2000gg(7). Congress also included anti-retaliation and anti-coercion provisions similar to those in Title VII and the ADA, which make it unlawful to discriminate against employees who file charges or participate in investigations, or to "coerce, intimidate, threaten, or interfere with any individual['s]" exercise of rights under the statute, *id.* § 2000gg-2(f)(1), (2); *see also id.* §§ 2000e-3(a) (Title VII anti-retaliation), 12203(b) (ADA anti-coercion). The PWFA's definition of employer is likewise the same as Title VII's. *See id.* § 2000gg(2)(B). And the PWFA includes a "[r]ule of construction" that provides that the PWFA "is subject to the applicability to religious employment set forth in" Title VII's religious organization exemption, 42 U.S.C. § 2000e-1(a). 42 U.S.C. § 2000gg-5(b).

The PWFA also incorporates Title VII's remedies and enforcement procedures. *See id.* § 2000gg-2. Individuals who believe their rights were violated must file a charge of discrimination with the EEOC within a statutorily defined time. *Id.* § 2000e-5(b). The EEOC then notifies the employer of the charge within ten days of receipt (which affords the employer an opportunity to raise defenses), investigates the charge—which may include soliciting a position statement from the employer in which defenses may be raised—and then determines whether "reasonable cause" exists to believe the statute was violated. *Id.* If the EEOC does not find "reasonable cause" or determines that an employer defense applies, the charge is dismissed, and the employee may file suit within 90 days of receiving a notice of right to sue, which the EEOC is required to issue. *Id.* § 2000e-5(b), (f)(1). If reasonable cause exists, the EEOC attempts to conciliate the charge; if that fails, the EEOC either files suit against the private employer or issues a notice of right to sue to the charging party. *Id.*

2

Regardless of the outcome of the EEOC's administrative process, a court reviews the matter *de novo* if a civil suit is filed.  *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44–45 (1974).

## II.    THE FINAL RULE

The PWFA directs the EEOC to issue implementing regulations, 42 U.S.C. § 2000gg-3(a), which the EEOC accomplished in the Final Rule.  As relevant here, the Final Rule discusses the circumstances when accommodations may be required, and explains that because the PWFA uses the same statutory language as Title VII—"pregnancy, childbirth, or related medical conditions"—and because the PWFA was intended to fill a gap in the existing Title VII framework, that language in the PWFA has the same meaning as in Title VII.  *See* 89 Fed. Reg. at 29,105–14.  Because the Supreme Court has interpreted Title VII to include "discrimination based on the potential to be pregnant, not only current pregnancy," *id.* at 29,102 (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991)), the PWFA may encompass circumstances in which employees seek workplace accommodations for infertility treatments or for contraception "depending upon the facts of the case, including whether the infertility treatments are sought by an employee with the capacity to become pregnant for the purpose of becoming pregnant." *Id.* at 29,102–03; *see id.* at 29,103–04 (discussing contraception).  There is no obligation that an employer or employer-sponsored health plan cover or pay for any procedures, or "that leave as an accommodation be paid leave."  *Id.* at 29,101, 29,104.

As for the PWFA's anti-retaliation and anti-coercion provisions, the Final Rule borrows from the Title VII and ADA frameworks.  *See id.* at 29,148.  The anti-coercion provision "does not apply to any and all conduct or statements that an individual finds intimidating; it prohibits only conduct that is reasonably likely to interfere with the exercise or enjoyment of PWFA rights."  *Id.*  As such, "general statements regarding an employer's mission or religious beliefs [are] not the type of conduct that . . . would be prohibited[.]"  *Id.*  Nothing in the Final Rule requires employers to engage in any specific speech or to endorse matters with which they disagree.  *See, e.g.*, *id.* at 29,111 (Final Rule does not require employers to "promote, or endorse abortion").

3

The EEOC also emphasized that whether an accommodation is covered by the PWFA is a fact-specific determination, *e.g.*, *id.* at 29,100. In other words, the Final Rule does *not* impose any blanket requirement on employers to provide an accommodation related to contraception, infertility treatments, or any other care. For example, the Final Rule affirmatively acknowledges that accommodations are *not* required where they would pose "undue hardship," *id.* at 29,125, or implicate "numerous statutory and constitutional defenses" applicable to "religious exercise," *id.* at 29,144, including the Rule of Construction, *id.* at 29,220; RFRA, *id.* at 29,148; the ministerial exception, *id.* at 29,150; and the First Amendment, *id.* at 29,152—all of which are considered on a "case-by-case basis," *id.* at 29,112–13; 29,125; 29,114; 29,148; 29,150; 29,152; 29,220. The EEOC also enhanced its administrative procedures for raising and deciding religious liberty defenses, including allowing employers to request that the "EEOC prioritize the consideration of a particular defense that could be dispositive and obviate the need to investigate the merits of a charge." *Id.* at 29,147–48.

## III.   PROCEDURAL HISTORY

The Bishops filed this lawsuit on May 22, 2024. *See* ECF No. 1. After consolidating this case with *Louisiana v. EEOC*, No. 2:24-cv-629, this Court preliminarily enjoined enforcement of "the Final Rule's requirement that covered entities provide accommodation for the elective abortions of employees that are not necessary to treat a medical condition related to pregnancy" against both sets of plaintiffs. *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 658–61 (W.D. La. 2024). The parties then briefed summary judgment. The Court granted the plaintiffs' motions for summary judgment on their APA claims related to the inclusion of abortion in the Final Rule. *See Louisiana v. EEOC*, 784 F. Supp. 3d 886, at 906–07 (W.D. La. May 21, 2025). The Court "decline[d] to enter judgment at [that] junction" on the other counts of the Bishops' Complaint. *Id.* at 14. Instead, the Court set a briefing schedule for summary judgment on issues that remain disputed. *See* ECF No. 119.

The Bishops then appealed this Court's May 21, 2025 partial final judgment. *See* ECF No. 124. That appeal remains pending.

## IV.    STATEMENT OF DISPUTED FACTS

Defendants do not believe that there are genuine issues of fact that would preclude the Bishops' motion for partial summary judgment. *See Louisiana*, 784 F. Supp. 3d at 893 (noting that the "facts of this case are not disputed"). The Bishops' statement of undisputed facts contains several legal conclusions—including as to the legal requirements of the Final Rule and the scope of protections in the PWFA's rule of construction. *See* 133-1 at 4. For the reasons stated below, Defendants disagree that the Final Rule places a substantial burden on the Bishops' exercise of religion.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**ARGUMENT**

The Bishops raise several statutory and constitutional arguments against the EEOC's interpretation of Title VII, the PWFA, and the Final Rule. To the extent the Court concludes that the Bishops are entitled to relief on their RFRA claim, this Court need not—and, indeed, should not— reach their broader constitutional arguments. *See* ECF No. 133-1 at 21 (arguing that RFRA provides "the Bishops complete relief"); *Blum v. Bacon*, 457 U.S. 132, 137 (1982) ("Where a party raises both statutory and constitutional arguments in support of a judgment, ordinarily we first address the statutory argument in order to avoid unnecessary resolution of the constitutional issue."); *Cath. Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1027 (D.N.D. 2024) (declining to address plaintiffs' other arguments as to PWFA Final Rule); Order at 14, *Dr. James Dobson Family Inst. v. Kennedy*, No. 4:24-cv-986 (N.D. Tex. Aug. 8, 2025) (same).

## I.    REQUIRING THE BISHOPS TO ASSERT RELIGIOUS RIGHTS AS A DEFENSE TO A PWFA CHARGE DOES NOT VIOLATE RFRA

RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government "demonstrates that application of the burden to the person" is (1) "in furtherance of a compelling

5

governmental interest"; and (2) "the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)–(b).  The issue here, however, is not whether a rule or statute that requires the Bishops to accommodate contraceptive and fertility treatments to which they have religious objections burdens the exercise of their religion.  Indeed, the government does not dispute that the Bishops could establish that forcing them to provide certain accommodations might impose a substantial burden on their religious practice in certain cases.  Nor is the issue whether the government could carry its burden in showing that requiring the Bishops to provide any specific accommodation is supported by a compelling governmental interest or the least restrictive means of furthering that interest.  The Bishops have not demonstrated that they have faced a request for such an accommodation.  It is, therefore, impossible to determine what interest might be served in the context of a particular factual scenario that has not yet occurred.  Rather, the question presented by the Bishops' motion is whether the EEOC's approach of requiring religious employers to assert defenses at the point when a charge is filed is itself a violation of those employers' religious rights.

The answer to that question is no.  The Final Rule recognizes that religious organizations have many defenses that they can assert in defense of a charge, does not purport to resolve any of those defenses against the Bishops or any other entity that might assert them, and commits to prioritizing resolution of those defenses at the earliest possible stage precisely to avoid unnecessary burdens on religious practice.  *See* 89 Fed. Reg. at 29,147–49.  The Bishops' RFRA claim thus incorrectly portrays the Final Rule as requiring them to violate their religious beliefs.  But because the EEOC recognizes employers with religious rights may assert those rights in defense of a charge, it necessarily also recognizes that those organizations with a meritorious defense cannot be held liable.  And RFRA is not itself violated by requiring the Bishops to assert their RFRA (or other religious) rights as a defense.

A.    **The Final Rule's Case-by-Case Approach for Evaluating RFRA Defenses Is Not a Substantial Burden**

"[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."  *Lozano v. Collier*, 98 F.4th 614, 621 (5th Cir. 2024) (citation omitted) (applying the

6

Religious Land Use and Institutionalized Persons Act). The challenged laws here do not meet that test because the EEOC has acknowledged that religious organizations have available defenses to liability and adopted enhanced procedures to afford employers an opportunity to raise those defenses early in the charge process. The Final Rule applies across the country's employers, to a variety of entities, and makes clear it does not affect the preexisting viability of RFRA-based defenses. 89 Fed. Reg. at 29,148–49 ("[T]he Commission will carefully consider these matters, analyzing RFRA defenses . . . on a case-by-case basis."). The Final Rule's commitment to addressing religious objections on a case-by-case basis is wholly consistent with RFRA and does not infringe on the Bishops' religious freedoms. *See, e.g.*, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) ("*O Centro*") (affirming "feasibility of case-by-case consideration of religious exemptions to generally applicable rules"); *Lozano*, 98 F.4th 614, 626 (explaining that the "substantial burden inquiry requires a case-by-case, fact specific injury" (cleaned up)). RFRA itself contemplates that rights conferred by that statute will sometimes be asserted as a "defense in a judicial proceeding." 42 U.S.C. § 2000bb-1(c). And the Supreme Court has observed that RFRA "might supersede" general anti-discrimination "commands *in appropriate cases.*" *Bostock v. Clayton County*, 590 U.S. 644, 682 (2020) (emphasis added).

Because the EEOC's approach neither vitiates religious defenses nor indicates it would require accommodations that conflict with an employer's religious practices, the Final Rule is fundamentally dissimilar to the cases cited by the Bishops where courts considered agency policies where it was uncontested that the regulation applied to the plaintiff that was seeking an exemption. *See, e.g.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014) (challenging *requirement* that closely held corporations provide insurance coverage for birth control); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 667-68 (2020) (challenging self-certification *requirement* for religious organizations); *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 929 (5th Cir. 2023) (noting "admissions from the EEOC that Braidwood's current practices violate Title VII"); *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 376 (N.D. Tex. 2021) (stating "[n]o party dispute[d]" that the relevant regulatory scheme was likely "to burden . . . [p]laintiffs' religious exercise").

7

Here, in contrast, the Bishops are not "required to choose between two untenable alternatives: either (1) violate [the law] and obey their convictions or (2) obey [the law] and violate their convictions." *Braidwood*, 70 F.4th at 937. Existing religious defenses that are unaffected by the EEOC's analysis protect the Bishops. And the EEOC has not claimed that the Bishops must change their religious policies on any form of accommodation to which they assert a religious objection "to avoid non-compliance." ECF No. 133-1 at 23. In fact, the EEOC has done just the opposite in repeatedly promising not to interpret the PWFA or the Final Rule to require the Bishops to accommodate the challenged procedures at least until the agency revises the Final Rule. *See, e.g.*, ECF No. 131 at 4; *cf.* ECF No. 137.

Given this commitment to consider RFRA and other relevant religious defenses, the Bishops argue that "potential liability" and "the inquiry the EEOC requires" are themselves substantial burdens on their religious exercise. ECF No. 133-1 at 23–24. But the fact that the EEOC has committed itself to considering religious defenses at an early stage substantially reduces any prospect of the ongoing investigations the Bishops fear. *See also infra* at pp. 16–17. This is far more than an agency's "promise to comply with the Religious Freedom Restoration Act" which, in *Franciscan Alliance, Inc. v. Becerra*, did not defeat the plaintiff's assertion that it was "within the 'class whose conduct is arguably restricted'" for purposes of Article III standing. 47 F.4th 368, 377 (5th Cir. 2022) (citation omitted);[1] *see* 89 Fed. Reg. at 29,148–50 (setting forth EEOC's detailed analysis). Since the EEOC has disclaimed any intent to force the Bishops to provide the accommodations to which it objects, the Bishops face no pressure from the EEOC to "immediately change" any "religious policies" to avoid liability under the rule. ECF No. 133-1.

And even if an employee or Commissioner filed a charge, the EEOC has specifically enhanced its procedures for considering religious defenses to reduce the burden on any employer that wishes to

---

[1] The Fifth Circuit's analysis of the RFRA claim at issue there addressed standing and mootness, not whether the agency's position imposed a substantial burden *on religious exercise. Id.*; *see Purl v. U.S. Dep't of Health & Hum. Servs.*, No. 2:24-cv-228-Z, 2025 WL 1708137, at *7 (N.D. Tex. June 18, 2025) (rejecting argument that regulation did not interfere with state-law compliance for standing purposes because "we accept as valid the merits of [plaintiffs'] legal claims" and such arguments go to the merits of the claim).

assert them.  *See* 89 Fed. Reg. at 29,147–48.[2]  Those procedures allow employers to raise religious (or other) defenses at any stage of the non-adversarial, administrative process, request prioritization of such defenses, and "easily inform the [EEOC] of a potential defense" via an online portal.  *Id.*  The EEOC will then seek to "resolve the charge based on the information submitted in support of asserted defenses, including religious defenses, in order to minimize the burden on the employer and the charging party."  *Id.*  Even those courts that have concluded that particular plaintiffs are entitled to a RFRA exemption to the Final Rule have specified that their rulings did not "offer any person blanket immunity from prosecution under . . . the PWFA," *Dobson* at 25, which is inconsistent with the idea that the process of asserting a defense is itself a substantial burden on an entity's religious rights.

In short, the Final Rule does not affect the Bishops' ability to assert a religious defense—of any stripe—in response to a charge.  And the EEOC has committed to applying those doctrines in good faith.  Where such a defense applies, the Bishops are not required to provide the accommodations to which they object.  Nor are they obligated to update their policies or practices to suggest that they will provide those accommodations.  Under these circumstances, the Bishops have not shown that the EEOC's case-by-case resolution of these issues is itself a substantial burden.

> **B.  The EEOC's Application of Religious Defenses Is Supported by a Compelling Interest.**

Even assuming the EEOC's commitment "to promptly consider" defenses, including religious defenses, that "would result in dismissal of the charge" created a substantial burden on the Bishops' religion, *see* 89 Fed. Reg. at 29,147, that approach is supported by compelling interests.  This Court recognized in its preliminary injunction decision that the PWFA in general furthers important interests and equities, including "eliminat[ing] discrimination and promot[ing] women's health and economic security."  *Louisiana*, 705 F. Supp. 3d at 663 (quoting H.R. Rep. No. 117-27, at 1 (EEOC_136661)).

---

[2] Plaintiffs repeatedly invoke *EEOC v. Catholic University*, 83 F.3d 455, 466 (D.C. Cir. 1996) as evidence that the EEOC does not adequately protect the Bishops' religious rights.  *See, e.g.*, ECF No. 133-1 at 24.  But the conduct in that 30-year-old case pre-dated RFRA, and the employer did not assert a RFRA defense until the case reached the D.C. Circuit.  *Cath. Univ.*, 83 F.3d at 468.  And the EEOC has since enhanced its procedures to ensure early consideration of religious defenses precisely to avoid imposition on religious rights.  *See* 89 Fed. Reg. at 29,147–48.

The EEOC thus has a compelling interest in ensuring that entities invoking religious rights to decline requests for accommodation are entitled to those defenses under the particular circumstances presented by the request.  *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 362-63 (2015) (describing RFRA as contemplating a "more focused inquiry" (cleaned up)); *O Centro*, 546 U.S. at 430-31 (requiring "scrutin[y of] the asserted harm of granting specific exemptions to particular religious claimants").  In related contexts, the Supreme Court has explained that "context matters" in the application of the "compelling governmental interests standard."  *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (cleaned up).  Courts and administrative agencies considering religious defenses must apply those defenses "in an appropriately balanced way to specific claims for exemptions as they arose."  *O Centro*, 546 U.S. at 436 (cleaned up).  Faced with the interests underpinning the PWFA, on the one hand, and a need to appropriately apply religious defenses on the other, the EEOC's case-by-case determination of religious defenses furthers the governmental interest of ensuring that Congress's accommodation policy is fulfilled to the maximum extent while protecting the rights of those with valid religious defenses.

The Bishops do not appear to contest that the PWFA is supported by compelling interests as a general matter, but rather contend that these asserted interests are insufficiently specific to impose accommodation requirements "as to reproductive practices such as IVF and contraception" onto them.  ECF No. 113-1 at 24.  But the EEOC has not indicated that it would require the Bishops, specifically, to offer those accommodations.  Rather, the Bishops' claim is that requiring them to assert a defense is itself a substantial burden on their religious exercise.  As to that asserted burden, the government's interest in applying religious defenses correctly exists in every case.

The Bishops contend that the Final Rule's other exemptions show that the EEOC's compelling interest is overstated.  *See* ECF No. 133-1 at 25.  Each of those exemptions, however, is decided on a case-by-case basis at the point a charge is filed.  The *per se* religious exemption the Bishops seek, which would require no case-by-case analysis, is not comparable to those exemptions.  89 Fed.

Reg. at 29,126 (explaining that undue hardship[3] is treated on a "case-by-case basis"); *id.* at 29,151 (explaining that EEOC will treat religious defenses and the exemption of small employers—a common feature of civil rights statutes[4]—similarly). Their existence, therefore, does not undermine the government's interest in ensuring defenses and exceptions are supported by the circumstances of a charge.

### C.    The EEOC's Case-By-Case Approach to Religious Defenses Is the Least Restrictive Means.

The Final Rule uses the least restrictive means to address these compelling interests and fulfill the PWFA's statutory mandates. The Bishops' suggestion that an advisory-opinion-like process could be used to provide preclearance ignores that "[t]he PWFA does not provide a mechanism for the Commission to provide legally binding responses to employer inquiries about the potential applicability of religious or other defenses" before a charge is brought. 89 Fed. Reg. at 29,147. And the Final Rule is narrowly tailored in preserving religious defenses and enhancing procedures for considering them, excepting accommodations that cause undue hardship, and specifying that employers (and their health plans) need not pay for any specific care or provide paid leave to employees seeking it. *See id.* at 29,104; 29,148; 42 U.S.C. 2000gg–5(a)(2). Within this particular statutory framework, Plaintiffs cannot demonstrate that they are entitled to a blanket RFRA exemption in advance. Because the EEOC has confirmed that religious entities may assert religious

---

[3] Consideration of undue hardship includes hardships related to burdens on religion. *See, e.g.*, 89 Fed. Reg. at 29,154 (the Agency's consideration of assertions of undue hardship includes "whether granting a particular reasonable accommodation would 'fundamentally alter the nature of the business'").

[4] *See, e.g.*, 42 U.S.C. § 2000e(b) (Title VII applicable to employers with fifteen or more employees); 29 U.S.C. § 2611(4)(A)(i) (FMLA applicable to employers with 50 or more employees); 29 U.S.C. § 630(b) (ADEA applicable to employers with 20 or more employees); 42 U.S.C. § 12111(5)(A) (ADA applicable to employers with 15 or more employees). Congress's decision to limit the PWFA's application to small employers to promote one weighty interest—*i.e.*, "easing entry into the market and preserving the competitive position of smaller firms," *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 447 (2003)—does not undermine the compelling nature of the interest that Congress sought to advance with respect to the class of covered employers. Otherwise, even Title VII's goal of combatting discrimination could not be considered compelling given that statute's small-employer limitation. *Contra EEOC v. Miss. Coll.*, 626 F.2d 477, 488–89 (5th Cir. 1980). And the Social Security Act likewise could not serve a "very high" governmental interest given the way its coverage was "broadened" over the years. *United States v. Lee*, 455 U.S. 252, 258-59 & n.7 (1982).

defenses to any charge, and because the Final Rule's case-by-case approach of considering RFRA defenses does not itself violate RFRA, the Bishops' RFRA claim fails.

## II.    THE EEOC'S INTERPRETATION OF THE PWFA'S RULE OF CONSTRUCTION SATISFIES APA REVIEW

The Bishops' primary argument is that the EEOC's interpretation of the PWFA's Rule of Construction is unlawful under the Administrative Procedure Act.  The PWFA's Rule of Construction states that the PWFA "is subject to the applicability to religious employment set forth in section 2000e-1(a) of" Title 42 of the U.S. Code, that is, Title VII's religious organization exemption.  42 U.S.C. § 2000gg-5(b).  The relevant portion of Title VII provides that "this subchapter shall not apply . . . to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such [entity] of its activities."  *Id.* § 2000e-1(a).

In the Final Rule, the EEOC explained that it would apply the Rule of Construction in exactly the same way it applies Title VII's religious organization exemption:  on a case-by-case basis.  *See* 89 Fed. Reg. at 29,145–47.  Indeed, the operative regulation adopted by the Final Rule simply repeats the text of the PWFA.  *See* 29 C.F.R. § 1636.7(b) (providing that the "PWFA and this part are subject to the applicability to religious employment set forth in section 702(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000e-1(a)").  The Bishops argue that the Final Rule "unlawfully narrowed" the Rule of Construction to "protect[] only against claims for religious-based discrimination."  ECF No. 133-1 at 11.  As the Final Rule makes clear, however, entities are free to invoke religion as a defense to *any* claim of discrimination under the PWFA:

> If a qualifying religious organization asserts as a defense to a claim under the PWFA that it took the challenged action on the basis of religion and that section 107(b) should apply, the merits of any such asserted defense will therefore be determined on a case-by-case basis consistent with the facts presented and applicable law.

89 Fed. Reg. at 29,147.  The EEOC has applied the same approach to considering Title VII's religious employer provision for decades. *Id.* at 29,146–47.  Thus, for example, the EEOC has dismissed Title VII charges asserting sex or pregnancy discrimination after concluding that the claim was really one

12

of religious discrimination falling within the religious organization exemption. *See Combs v. Central Tex. Annual Conf. of United Methodist Church*, 173 F.3d 343, 345 (5th Cir. 1999). That exemption "permits religious organizations to discriminate on the basis of religion." *Id.*

Ultimately, the question here is whether it was unlawful for the EEOC to adopt a case-by-case approach for evaluating the Rule of Construction, and Plaintiffs provide no reason why case-by-case consideration of the § 107(b) defense is inappropriate even if their interpretation of the scope of that provision were correct. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). In particular, a case-by-case evaluation will *always* be required to determine whether an entity is a religious employer and whether its actions in a particular case genuinely were taken on the basis of religion. *E.g., Miss. College*, 626 F.2d at 484–86 & nn.10–11 (remanding for factual finding about whether hiring decision was based on religion or based on impermissible characteristic); *see also Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000) (applicability of exception is "primarily a factual battle"); *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring).

Nor does the "alien exemption" to Title VII compel a categorical approach to the PWFA's Rule of Construction. *See* ECF No. 113-1 at 12–13. The "alien exemption" is facially not limited to a particular type of employment in the same way, but rather recognizes that federal law generally is meant to apply only within the territorial jurisdiction of the United States. *See, e.g., EEOC v. Aramco*, 499 U.S. 244, 248 (1991), *abrogated on other grounds by Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006); *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 420 (D.C. Cir. 2005), *cert. denied* 546 U.S. 1173 (2006).

Finally, the Bishops' invocation of the major questions doctrine and constitutional avoidance are meritless. *See* ECF No. 113-1 at 20. They argue that the EEOC's "interpretation of the PWFA's religious exemption" is contrary to the statute. ECF No. 113-1 at 14. But for the reasons already explained, the Final Rule merely incorporated the EEOC's preexisting interpretation of the scope of Title VII's religious organization exemption unchanged—an issue on which the EEOC claims no rulemaking authority or entitlement to deference. And the major questions doctrine is particularly inapt here, where the Final Rule does not impose any obligations targeted at religious entities and

13

recognizes that those entities maintain their RFRA, constitutional, and other defenses to Title VII and the PWFA. 89 Fed. Reg. at 29,148–53. The doctrine is therefore inapplicable.

The Bishops' constitutional avoidance argument is similarly meritless. The Fifth Circuit has already confirmed that Title VII's religious employer exception may be applied consistently with the First Amendment. *Miss. Coll.*, 626 F.2d at 486–89. And some degree of inquiry is inherent to the exception, given the need to determine whether an employer is a religious employer and whether the objection is a religious one. EEOC's case-by-case approach is no more entangling into an entity's religious views than a court's consideration of whether a religious defense applies in any given case. *See id.* at 485–86 (holding that EEOC's authority to investigate a charge is precluded by section 702 "if a religious institution . . . presents convincing evidence that the challenged employment practice resulted from discrimination on the basis of religion" but a charge may proceed in other circumstances); *cf. Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. 171, 195 n.4 (2012) (explaining that district courts "have power to . . . decide whether the claim can proceed or is instead barred by the ministerial exception").

## III. THE PWFA DOES NOT CATEGORICALLY VIOLATE THE CHURCH AUTONOMY DOCTRINE

The church autonomy doctrine is rooted in both the Establishment Clause and the Free Exercise Clause and protects the "independence of religious institutions." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). It protects the right of religious institutions "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952). "This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission." *Morrissey-Berru*, 591 U.S. at 746. The doctrine thus protects, for example, religious institutions' hiring and firing of ministers, *see Hosanna-Tabor*, 565 U.S. at 186; their inclusion and exclusion of members, *see Bouldin v. Alexander*, 15 Wall. 131, 139 (1872)); and internal government and discipline, *see Servian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 720 (1976).

14

Following these principles, the government fully appreciates that there are many cases in which the Bishops would not be obligated to offer accommodations because of a conflict with their religious doctrines. *See* 89 Fed. Reg. at 29,150. The Bishops argue that the PWFA, Title VII, and the Final Rule violate the church autonomy doctrine because those laws require the Bishops to act or speak in ways that violate their faith and exposes them to investigations that entangle the government into religious matters. Compl. ¶ 243; ECF No. 133-1 at 16–21. But that argument only works if one assumes that the EEOC will not properly apply the various statutory and constitutional religious defenses that the Bishops may assert if a charge were ever filed. Nothing in the challenged statutes or Final Rule supports that view. Indeed, the Final Rule *confirms* that religious entities are subject to protections, and that EEOC "will 'take great care' in evaluating the asserted religious or other defense(s)" raised by employers. 89 Fed. Reg. at 29,147. And those defenses include the religious organization exemption imported into the PWFA from Title VII, *id.*, the ministerial exception, *id.* at 29,151, and other defenses deriving from religious protections enshrined in the Constitution, *id.* at 29,147.[5] It bears repeating: none of the challenged laws here target the Bishops specifically. They are generally applicable laws to which the Bishops may have statutory or constitutional defenses. And certain constitutional defenses, such as the church autonomy doctrine and the ministerial exception— apply with special force as to the Bishops, as many of their employment decisions will be shielded from review by those doctrines. The Bishops thus need not comply with Title VII or the PWFA— either in making employment decisions, changing their religious speech, or accommodating conduct that their faith forbids—to the extent they have an available religious defense.

---

[5] The Bishops previously argued that the Final Rule "narrows" the ministerial exception because it did not "confirm 'that the exception bars all PWFA claims for qualifying ministerial employees.'" ECF No. 83 at 23 (quoting 89 Fed. Reg. at 29,150). But that argument badly misquotes the Final Rule, which merely explained the EEOC had "decline[d] to make changes" to the Final Rule "regarding its interpretation of the ministerial exception" because its "position is consistent with the relevant Supreme Court case law" applying a case-by-case approach. 89 Fed. Reg. at 29,150. And in fact the EEOC provided an example conveying that it would "likely apply" the ministerial exception to a "religious school instructor employed by the Catholic Church" who was refused time off to attend prenatal appointments because "the teacher is pregnant but not married." *Id.*

15

Perhaps in recognition that nothing in the EEOC's interpretation of Title VII, the PWFA, or the Final Rule decides a religious defense against them, the Bishops switch to arguing that the mere possibility that they may have to assert the religious defense in response to a charge itself violates the church autonomy doctrine. *See* ECF No. 133-1 at 20–21. The church autonomy doctrine, however, does not operate to deprive administrative agencies and courts of jurisdiction to inquire into whether the doctrine bars the EEOC from pursuing a charge in a specific case. *See McRaney v. N. Am. Mission Bd. of the S. Baptist Conv.*, No. 23-60494, 2025 WL 3012553, at *13 (5th Cir. Oct. 28, 2025) (application of church autonomy doctrine does not mean that a "court lacks jurisdiction over the case as a whole"). Indeed, the Supreme Court has held that the ministerial exception—which the Bishops acknowledge is a "component" of the church autonomy doctrine, ECF No. 133-1 at 16—"operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar," *Hosanna-Tabor*, 565 U.S. at 195 n.4. If "[d]istrict courts have power to consider" a disability discrimination claim against a religious group "and to decide whether the claim can proceed or is instead barred by the ministerial exception" without running afoul of the church autonomy doctrine, *id.*, then so too can an administrative agency.

The EEOC has adopted enhanced charge processing procedures precisely to prevent "protracted investigations and litigation" that the Bishops fear. ECF No. 133-1 at 21. EEOC's involvement can only be triggered by a charge, *see* 89 Fed. Reg. at 29,147, which may never even be filed and for which the Bishops could proffer religious defenses. The EEOC's enhanced procedures for consideration of religious defenses as a threshold matter, *see id.* at 29,147–48, will also prevent any unnecessary "entangling investigations," ECF No. 133-1 at 20. That type of threshold consideration of religious defenses is entirely consistent with the Bishops' own cases. For example, in *Mississippi College*, the Fifth Circuit concluded that, to avoid conflicts with "the rights guaranteed by the religion clauses of the first amendment," Title VII prevented the EEOC from investigating further after a "religious institution . . . presents convincing evidence that the challenged employment practice resulted from discrimination on the basis of religion." 626 F.2d at 484–85; *see also Curay-Cramer v. Ursuline Academy*, 450 F.3d 130, 142 (3d Cir. 2006) (explaining that some Title VII claims against religion organizations "must be judged on a case-by-case basis"); *cf. Duquesne Univ. of the Holy Spirit v.*

16

*NLRB*, 947 F.3d 824, 831 (D.C. Cir. 2020) (explaining *Great Falls* test, which requires NLRB to consider whether institution meets certain characteristics before exercising jurisdiction).  And as a practical matter, the EEOC will always have to determine in response to a charge whether an entity is a religious organization and whether its actions were taken on the basis of religion.  Nothing about that invites the EEOC to "weigh the Church's religious beliefs" or otherwise substitute its judgment on religious doctrine for that of the Bishops.  ECF No. 133-1 at 20.

## IV.    THE PWFA SATISFIES THE FIRST AMENDMENT

### A.    The PWFA Does Not Categorically Infringe the Bishops' Free Exercise Rights.

Laws "incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable."  *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021).  A law is not neutral and generally applicable if it treats "any comparable secular activity more favorably than religious exercise," *Tandon v. Newsom*, 593 U.S. 61, 62 (2021), or "if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" that are discretionary, *Fulton*, 593 U.S. at 534 (cleaned up). The Bishops contend that the EEOC's interpretation of the PWFA's religious exemption violates their rights under the Free Exercise Clause.  *See* ECF No. 133-1 at 26–27.  But those arguments misapply relevant precedent and misconstrue the EEOC's interpretation of the religious exemption.

*First*, the Bishops argue that the PWFA (and by extension Title VII itself) must meet strict scrutiny because it treats secular activity—employers with fewer than 15 employees and who can show that a particular accommodation would impose undue hardship—more favorably than religious exercise.  *See* ECF No. 133-1 at 27.  But the Final Rule treats those issues similarly.  *See* 89 Fed. Reg. at 29,151 (explaining that Congress "as it did with Title VII, exempted employers (both secular and religious) with fewer than 15 employees" and also "provided an exception for religious employers under the rule of construction").  Just as the Final Rule requires religious defenses to be asserted on a case-by-case basis, whether an employer has fewer than 15 employees is also determined per-case.  *See Arbaugh*, 546 U.S. at 516.  And religious employers are equally entitled to invoke undue hardship to decline to provide an accommodation.  *See* 42 U.S.C. § 2000gg-1(1); 89 Fed. Reg. at 29,151, 29,154.

17

The PWFA is thus unlike the COVID restrictions at issue in *Tandon*, which restricted at-home religious gatherings to three households while permitting other types of gatherings with no household limitation.  *See Tandon*, 593 U.S. at 63.  For the PWFA to be analogous to *Tandon*, it would need to exempt secular employers with fewer than 15 employees but decline to give that exemption—or any other—to religious employers.  That is not the case.[6]  And the Bishops' argument would call into question many other federal statutes that include small-employer exceptions.  *See, e.g.*, 42 U.S.C. § 2000e(b) (Title VII); 42 U.S.C. § 12111(5)(A) (ADA); 29 U.S.C. § 2611(4)(A)(i) (FMLA).  Such exemptions allow the government to advance compelling interests while "preserving the competitive position of smaller firms." *Clackamas Gastroenterology Assocs.*, 538 U.S. at 447.

*Second*, the Bishops argue that the PWFA requires strict scrutiny because it reserves "discretion for the government" in individualized cases.  ECF No. 133-1 at 26 (citing *Fulton*, 593 U.S. at 537).  But the facts here are nothing like those in the cases on which the Bishops rely.  EEOC has not "refuse[d] to extend th[e] exemption system to cases of religious hardship" or "made available" "individual exemptions . . . at the sole discretion of the Commission[]." *Fulton*, 593 U.S. at 535 (citations omitted).  Rather, the Final Rule extensively discusses the various exemptions and defenses available, describes the general legal framework for their applicability, establishes processes to enable employers to readily assert them, and commits to applying them where implicated by a given charge.  Therefore, whether an undue hardship or religious defense exists is not a matter of individualized discretion, but a question of whether the facts presented meet the relevant statutory or constitutional standard.  *Id.*; *see Gen. Conf. of Seventh-day Adventists v. Horton*, 787 F. Supp. 3d 99, 122 (D. Md. 2025).  Indeed, the Bishops' argument is belied by the fact that the undue hardship test has long been applied to individual employee requests

---

[6] Defendants acknowledge that Judge O'Connor reached a contrary conclusion in *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571 (N.D. Tex. 2021).  The Fifth Circuit did not adopt that reasoning.  *See Braidwood*, 70 F.4th at 940 (vacating *Bear Creek*'s judgment that religious organization was "constitutionally entitled to a Title VII exemption").

for religious accommodations under Title VII without invocation of strict scrutiny. *See, e.g., Groff v. DeJoy*, 600 U.S. 447, 457–68 (2023).[7]

**B.      The PWFA Does Not Categorically Violate the Free Speech Clause.**

The Bishops argue that the PWFA violates the Free Speech Clause by (1) compelling the Bishops to associate with employees whose conduct and speech undermines Plaintiffs' religious expression and (2) restricting their religious speech and requiring facilitation of messages of which they disapprove. ECF NO. 133-1 at 27–29. But neither conclusion is supported.

**1.** As to expressive association, the government acknowledges that some applications of accommodation requirements could impose burdens on a religious organization's ability to restrict its community only to adherents of the policies and practices of that religion. *See Curay-Cramer*, 450 F.3d at 140. That is why the EEOC expressly allows employers to raise such defenses: "[S]hould the responding employer raise constitutional expressive association concerns as a defense to the charge during the charge process, the Commission will evaluate each claim on a case-by-case basis[.]" 89 Fed. Reg. at 29,153. And the cases the Bishops cite to support their argument either involved antidiscrimination laws that contained "no express exemption for religious employers" with religious objections, *Slattery v. Hochul*, 61 F.4th 278, 283 (2d Cir. 2023); *see Darren Patterson Christian Acad. v. Roy*, 699 F. Supp. 3d 1163, 1171–72 (D. Colo.) (citing state government official's statement that it could not "create exemptions" to antidiscrimination statute "for faith-based providers"); *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 231, 820 (E.D. Mo. 2018), or specific applications of forced association, *see, e.g., Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000).[8] The EEOC, in contrast, does not dispute the right of religious organizations to employ individuals who share their religion and practices. *See* 42 U.S.C. § 2000gg-5(b); *Little v. Wuerl*, 929 F.2d 944, 951 (3rd Cir. 1991); EEOC, Compliance

---

[7] As the Bishops acknowledge, their argument that the Free Exercise Clause requires strict scrutiny whenever government "imposes a substantial burden on religious exercise" is barred by *Employment Division v. Smith*, 494 U.S. 872, 879 (1990). *See* ECF No. 133-1 at 27 n.3.

[8] Two of the cases the Bishops cite in fact *rejected* expressive association claims like the one they bring here. *See Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 98 (2d Cir. 2003); *Priests for Life v. HHS*, 7 F. Supp. 3d 88, 109 (D.D.C. 2013).

Manual on Religious Discrimination, (12-I)(C) (2021), available at https://perma.cc/GJ6R-BLZL.  So while in many applications the Bishops' religious rights may very well preclude application of a PWFA accommodation requirement, the Bishops have not established that their expressive associational rights are infringed by the mere possibility that the EEOC might take a different view in a specific application later.

**2.**  The Bishops' free speech claim also fails.  The Final Rule makes plain that the type of speech described by the Bishops does not violate the PWFA.  *See* 89 Fed. Reg. at 29,142 ("[T]he making of general statements regarding an employer's mission or religious beliefs is not the type of conduct that the Commission previously has determined would be prohibited by this provision."); *see also* Blomberg Decl. (*USCCB*, ECF No. 77-2), Ex. 6 at 47-48 ("If a religious employee attempts to persuade another employee of the correctness of his beliefs, the conduct is *not necessarily objectively hostile*." (emphasis added)).  Nor does the Final Rule require them to affirmatively "promote, or endorse" care to which they object.  89 Fed. Reg. at 29,111.

Moreover, the Bishops' claim is founded on the false premise that the EEOC's interpretation of the PWFA infringes protected speech.  Compl. ¶ 265.  To the contrary, the Final Rule is again explicit that EEOC will consider free speech defenses on a case-by-case basis: "[S]hould the Commission receive a charge alleging coercion or retaliation, and should the responding employer raise constitutional concerns as a defense to the charge during the administrative charge process, the Commission will evaluate each claim on a case-by-case basis[.]"  89 Fed. Reg. at 29,152.  This approach is not unlawful or irrational, particularly given the absence of free speech concerns raised in connection with similar provisions in Title VII and the ADA.  *See id.*  Thus, the PWFA does not burden the Bishops' First Amendment speech rights.

## V.    THE COURT SHOULD NOT GRANT ALL OF PLAINTIFFS' REQUESTED REMEDIES

The Bishops request vacatur, declaratory relief, and a permanent injunction.  *See* ECF No. 133 at 2–3.  Or, in the alternative, the Bishops request a preliminary injunction with respect to accommodation or nondiscrimination requirements with respect to "contraception, sterilization,

and/or artificial reproductive technologies such as in vitro fertilization, artificial insemination, and surrogacy . . . for the pendency of this case." As an initial matter, the EEOC does not oppose extending the Court's September 3, 2025 Order for the pendency of this case and until the EEOC revisits the Final Rule. ECF No. 142; *see Position of Acting Chair Lucas Regarding the Commission's Final Regulations Implementing the Pregnant Workers Fairness Act*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/wysk/position-acting-chair-lucas-regarding-commissions-final-regulations-implementing-pregnant (last visited Sept. 8, 2025).[9] But if the Court is inclined to grant a final remedy, the Bishops have not shown they are entitled to the full panoply of relief they seek.

*First,* as the *Bishops* recognize, granting relief on their RFRA claim would afford them "complete relief." *See* ECF No. 133-1 at 21. To the extent the Bishops prevail on that claim, there would be no need for the court to consider Plaintiffs' remaining claims, including those arising under the Constitution. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2557–58 (2025); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (principles of equity prohibit remedies that are "more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

*Second,* the Bishops request that the Court issue relief running to all of the Final Rule, the PWFA, and Title VII. *See* ECF No. 133 at 3. Although the Bishops may invoke the APA's cause of action to challenge EEOC's Final Rule implementing the PWFA, they cannot seek APA relief against any EEOC interpretation of Title VII, because there is no final agency action for such a challenge. *See* 5 U.S.C. § 704 (providing that judicial review is available only for "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court"); *Louisiana*, 784 F. Supp. 3d at 909 (noting "the Court's limited grant of authority under the APA"). Although

---

[9] The EEOC regained a quorum on October 27, 2025, upon the swearing in of Commissioner Brittany Bull Panuccio. *See Brittany Bull Panuccio Begins Tenure as EEOC Commissioner*, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/newsroom/brittany-bull-panuccio-begins-tenure-eeoc-commissioner. The EEOC has not yet taken any action to revise the Final Rule.

Defendants acknowledge that, under Fifth Circuit law, APA vacatur of the Final Rule is an appropriate remedy, that vacatur should not purport to extend to any Title VII issue.[10]

*Third,* any final remedies should not prohibit the EEOC from complying with its statutory duty to issue notices of right to sue.  *See* 42 U.S.C. § 2000e-5(b), (f)(1).  The Court accepted the EEOC's argument that right-to-sue notices should not be enjoined pending resolution of this motion, *see* ECF No. 142, and it should reiterate that limitation in any final remedy.  As Judge O'Connor recently recognized in declining to enjoin the EEOC from issuing notices of right to sue in a case including claims similar to those the Bishops press here, the requirement that the EEOC issue a notice of right to sue is a statutory duty that flows from Title VII of the Civil Rights Act.  *See Dobson* at 26 (declining to enjoin EEOC from issuing notices of right to sue "because the EEOC is statutorily required to issue [them] even when they do not pursue enforcement").

The PWFA adopts Title VII's remedies and enforcement procedures.  42 U.S.C. § 2000gg-2.  Under those procedures, an individual who believes their rights have been violated must first file a charge with the EEOC.  *Id.* § 2000e-5(b).  If the Commission determines "that there is not reasonable cause to believe that the charge is true," or otherwise determines that it will not pursue the matter, "it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action."  *Id.*; *see id.* § 2000e-5(f)(1). Similarly, if no enforcement suit is brought or no conciliation agreement reached within 180 days, the EEOC "shall so notify the person aggrieved."  *Id.* § 2000e-5(f)(1); *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 545 (2019) ("Whether or not the EEOC acts on the charge, a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed. § 2000e–5(f)(1).").  A charging party may file its own lawsuit "within ninety days after the giving of such notice."  42 U.S.C. § 2000e-5(f)(1).  The notice of right to sue is thus the last step in a statutorily mandated pre-suit administrative requirements.

---

[10] The federal government does not believe that the APA provides for vacatur, providing instead for more traditional equitable remedies like injunctions.  *See* 5 U.S.C. § 703.  However, the Fifth Circuit has held that vacatur is an available remedy for APA challenges.  *E.g.*, *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859–60 (5th Cir. 2022).

The Bishops have previously suggested that the issuance of notices of right to sue "enable private plaintiffs to enforce abortion-accommodation requirements," ECF No. 125-1, and in the absence of a notice, the plaintiffs are free from suit, but that misstates the legal status of those notices. The Title VII administrative procedures incorporated into the PWFA are not jurisdictional. *See, e.g.*, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Fowlkes v. Ironworkers 40*, 790 F.3d 378, 385 (2d Cir. 2015). And because they are not jurisdictional requirements, they are subject to equitable exceptions. *See Zipes*, 455 U.S. at 393. The upshot is that, contrary to the Bishops' arguments, a private party may bring its claim to federal court even if the agency never issues the notice, so long as it can establish that an equitable exception applies. *See Fowlkes*, 790 F.3d at 385.

The three other district court opinions that have enjoined the EEOC from issuing notices of right to sue do not support extending that relief here. The district court in *Texas* enjoined the EEOC from issuing right-to-sue notices because it concluded "the PWFA as a whole was enacted unconstitutionally." *Texas v. Garland*, 719 F. Supp. 3d 521, 598 (N.D. Tex. 2024), *rev'd on other grounds sub nom. Texas v. Bondi*, No. 24-10386, 2025 WL 2374900 (5th Cir. Aug. 15, 2025). Thus, the *Texas* court concluded that the enforcement powers granted by that statute—including the acceptance of charges and issuance of right-to-sue notices—were "themselves unconstitutional." *Id.* In other words, that court concluded the agency had no power to engage in the administrative enforcement process because the only source of authority to do so was an unconstitutionally enacted statute. And in reaching that conclusion, the *Texas* court distinguished circumstances "where the plaintiffs challenged only the EEOC's interpretation of Title VII as violating their rights under" RFRA, "not the constitutionality of Title VII as a whole." *Id.* (citing *Religious Sisters of Mercy v. Cochran*, Nos. 3:16-cv-386 & 3:16-cv-432, 2021 WL 1574628, at *2 (D.N.D. Feb. 19, 2021)). In those circumstances, "the EEOC's general power to accept charges and issue notices [is] not implicated." *Id.*

Here, however, the Bishops make no similar claim that the EEOC has no *power* to issue a notice of right to sue because the PWFA itself is wholly unconstitutional. Rather, they argue only that "the EEOC's interpretation of" the PWFA violates their rights. *Id.* This case thus mirrors exactly the circumstance the *Texas* court distinguished. *Id.* That case, therefore, provides no basis to enjoin the

23

EEOC from meeting its statutory duty to issue notices of right to sue, even if the agency is enjoined from adopting a particular interpretation of the PWFA.

Two other courts enjoined the EEOC from issuing notices of right to sue with respect to certain charges against entities asserting religious rights. *Stanley M. Herzog Found. v. EEOC*, No. 4:24-cv-00651, 2025 WL 1734470 (W.D. Mo. Mar. 18, 2025); *Cath. Benefits Ass'n*, 732 F. Supp. 3d at 1028–29. One of those courts appeared to misperceive the legal effect of the EEOC's notice. That court apparently concluded that a notice of right to sue is "a determination of the agency that the organization is not subject to a religious exemption, which would bar any suit." *Cath. Benefits Ass'n*, 732 F. Supp. 3d at 1029. But that is not so. The EEOC issues notices of right to sue whenever it elects not to proceed with a case, including because it has determined that a religious exception applies. *See Newsome v. EEOC*, 37 F. App'x 87, 1 (5th Cir. 2002) (per curiam) (noting that the right to sue letter issued in that case indicated that the EEOC was dismissing the charge because the respondent "employs less than the required number of employees or is not otherwise covered by the statutes" after the respondent provided documentation that it was "a religious organization"). The second court merely enjoined the issuance of notices of right to sue without explaining its reasoning, *Stanley M. Herzog Found.*, 2025 WL 1734470, at *14 & n.16, and did not include that restriction in its final judgment, Order at 2, *Stanley M. Herzog Found. v. EEOC*, No. 4:24-cv-651 (W.D. Mo. Nov. 18, 2025), ECF No. 88.

Finally, enjoining the EEOC from issuing right-to-sue notices places unnecessary burdens on employers and the courts. If the EEOC provides the charging party with a notice of right to sue, the statute provides that "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge" by that charging party. 42 U.S.C. § 2000e-5(f)(1). That language provides certainty to all parties because it establishes an outer temporal limit during which a private party may initiate a lawsuit. The notice thereby "promote[s] justice" by ensuring that private parties are diligent in asserting their claims, else their case be dismissed as untimely. *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944); *see Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 812–13 (2024).

24

Those salutary benefits are lost if the notice of right to sue never issues.  "The ninety-day limitations period . . . begins to run only upon receipt by the charging party of unambiguous notice that the EEOC has terminated its administrative processing of the charge."  *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 245 (5th Cir. 1980); *see also Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221–22 (3d Cir. 2024) (90-day clock begins when plaintiff receives right-to-sue letter or its equivalent); *Scott v. Gino Morena Enters., LLC*, 888 F.3d 1101, 1108–12 (9th Cir. 2018) (90-day period begins when aggrieved person is given a right to sue notice, not merely when they become eligible to receive one).  If the EEOC is prevented from issuing the notice, the 90-day clock never starts to run. Employers, including the Bishops, would thus suffer uncertainty about whether and when employees might sue and could be subject to litigation for claims that would have otherwise long ago expired.

## CONCLUSION

For the foregoing reasons, the Bishops' motion for partial summary judgment should be denied.

Dated:  November 25, 2025

Respectfully submitted,

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

*/s/ Jacob S. Siler*
JACOB S. SILER (D.C. Bar #1003383)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-4556
Facsimile: (202) 616-8460
Email: jacob.s.siler@usdoj.gov

*Counsel for Defendant*